## Passmore *versus* Western Union Telegraph Co.

1. On the printed blanks of a telegraph company was a condition that the company would charge extra for repeating a message, and would not be responsible for any error, &c., in transmitting an *unrepeated* message, &c. The plaintiff knowing the rule delivered a message to the company without requiring it to be repeated ; there was an error in the transmission.  *Held*, that the company was not responsible.   Per HARE, P. J.

2. The maxim *quilibet potest renunciare juri pro se introducto* does not apply to breach of a duty in relation to a right conferred on an individual for his protection and for the common good.   *Id.*

3. Telegraph companies are public agents, and as such bound to exact diligence ; and liable to every one injured by a want of due care on their part or that of their agents.   *Id.*

4. Such company may prescribe rules to insure safety and diminish loss in case of accident, and may declare that if they are not observed the party injured shall be precluded, on the doctrine of contributory negligence ; such rules must be reasonable.  *Id.*

5. One sending a message and not asking it to be repeated is taken to have acquiesced in the conditions prescribed by the rules, and cannot object to a precaution which he has waived.   *Id.*

April 2d 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of July Term 1873, No. 138.

This was an action on the case, brought to the September Term of the court below, by George Y. Passmore against The Western Union Telegraph Company.

The declaration set out, that the plaintiff, on the 14th of March 1865, offered to defendants, at their office in Parkersburg, West Virginia, a message to be transmitted to P. Edwards, 423 Walnut Street, Philadelphia, in the following words, " I *hold* the Tibbs tract for you ; all will be right;" that defendants accepted the message and undertook to transmit it to Philadelphia and deliver it to Edwards for a reward then paid by the plaintiff, but the defendants fraudulently intending to deceive and injure the plaintiff, " erroneously, untruly, negligently and carelessly," sent and

delivered to Edwards a message, viz. : " I *sold* the Tibbs tract for you," &c., the message delivered by the plaintiff referring to a tract of land which plaintiff had bought on the undertaking of Edwards to repurchase it or procure purchasers for it at an advance, and that Edwards, trusting to the correctness of the message as received, would not repurchase the tract or procure purchasers therefor, and that thereby the plaintiff lost the agreed advance, was for a long time unable to sell the land, that it depreciated in value, that plaintiff lost the use of the money he had paid for it, was put to great expense in endeavoring to sell it, and had to sell it at a large loss.

The plea was, " Not Guilty."

The case was tried before Hare, P. J., on the 30th of November 1872.

The plaintiff, in support of the allegations in his declaration, gave in evidence correspondence between himself and Edwards by letter and telegraph in relation to the purchase of the land by Edwards, &c.

One of the latest telegraphs was from Edwards to plaintiff; it was dated Philadelphia March 10th 1865. " Can we have first payment April 1st;" the reply of plaintiff same day was " Will let you know positively on Tuesday next."

The plaintiff then testified : " I next telegraphed March 14th. I went to Parkersburg, the telegraph office there ; there were usually telegraphic blanks at the telegraph office. Don't know whether I wrote on one of the company's blanks or not; handed the written message to the operator at the window ; gave him sufficient time to read it ; asked him if he understood it; he said he did ; I wrote the message ' I *hold* the Tibbs tract for you, all will be right.' " About May 24th 1865 plaintiffs called at the telegraph office in Baltimore, and got there a copy of his last message ; it was :

" Parkersburg, W. Va., March 14th 1865.

P. Edwards, 423 Walnut street, Philadelphia.—I *sold* the Tibbs tract for you, all will be right.

G. W. PASSMORE."

In the same month he went to the Parkersburg office and asked to see his message, saying there had been a mistake and he wished to see who was in fault ; it could not be found ; made another inquiry eighteen months afterwards and it still could not be found ; it had never been found.

The blanks for messages kept at the telegraph office contain the following:—

" Terms and conditions on which this and all messages are received by this company.

" In order to guard against and correct as much as possible some

[Passmore *v.* Western Union Telegraph Co.]

of the errors arising from atmospheric and other causes appertaining to telegraphy, every important message should be repeated, by being sent back from the station at which it is to be received to the station from which it is originally sent.  Half the usual price will be charged for repeating the message, and while this company in good faith will endeavor to send messages correctly and promptly, it will not be responsible for errors or delay in the transmission or delivery, nor for the non-delivery of repeated messages, beyond two hundred times the sum paid for sending the message, unless a special agreement for insurance be made in writing, and the amount of risk specified on this agreement, and paid for at the time of sending the message.  Nor will the company be responsible for any error or delay in the transmission or delivery or for the non-delivery of any unrepeated message beyond the amount paid for sending the same, unless in like manner specially insured, and the amount of risk stated herein and paid for at the time." * * *

There was evidence also that the plaintiff had bought the land and that Edwards had agreed to buy it from him, &c. ; that in consequence of the mistake in the telegraphic message, Edwards had refused to buy, and that the plaintiff had to sell the property at a great loss.

The court reserved the following questions:—

1. Whether the defendants are liable in this case, the plaintiff not having insured the message, nor directed the message to be repeated.

2. Whether the form in which the telegram was transmitted by the defendants and received by Edwards discharged Edwards from his liability as a purchaser under his contract with plaintiff, and whether, therefore, the damages sustained by plaintiff were the necessary or legal consequence of a legal default of the telegraph company.

The verdict was for the plaintiff for $4000.

The court afterwards entered judgment on the reserved points for the defendants *non obstante veredicto.*

The plaintiff took a writ of error and assigned for error ; entering judgment for the defendants on the reserved points *non obstante veredicto.*

Hare, P. J., delivered the opinion of the District Court, viz. :—

" This is an action against the Western Union Telegraph Company, to recover damages for a mistake committed by their servants in the transmission of a telegraphic message from Parkersburg, in West Virginia, to Philadelphia.  The telegram as originally written by the plaintiff was as follows :

'Parkersburg, April 14th 1865.

To P. Edwards, 423 Walnut Street, Philadelphia.

I hold the Tibbs tract for you, all will be right.'

[Passmore *v.* Western Union Telegraph Co.]

" Unfortunately, through some unexplained mistake or accident, an *s* was substituted for an *h*, so that the message when delivered in this city read, ' I *sold* the Tibbs tract, &c.' Edwards thereupon broke off the contract into which he had entered for the purchase of the land. The mistake was not discovered until the 2d or 3d of May, when the plaintiff came to Philadelphia, and had an interview with Edwards, who said that supposing the telegram to be correct, he had made other arrangements.

" The jury found a verdict for the plaintiff, subject to the opinion of the court on the following points :—

" 1. Whether the defendants are liable in this case, the plaintiff not having insured the message nor directed it to be repeated; and

" 2. That the form in which the telegram was transmitted by the defendants and received by Edwards, did not discharge Edwards from his liability as a purchaser under his contract with the plaintiff, and therefore, that the damages sustained by the plaintiff were not a necessary or legal consequence of the default of the telegraph company.

" It being agreed that judgment should be entered for the defendants if the court in banc were of opinion with them on either point.

" The first point grows out of the terms and conditions prescribed by the company for the receipt and transmission of all messages. These were, *inter alia :*

" ' In order to guard against and correct as much as possible some of the errors arising from atmospheric and other causes appertaining to telegraphy, every important message should be *repeated*, by being sent back from the station at which it is to be received to the station from which it is originally sent. Half the usual price will be charged for repeating the message, and while this company in good faith will endeavor to send messages correctly and promptly, it will not be responsible for errors or delays in the transmission or delivery, nor for the non-delivery of *repeated messages* beyond *two hundred* times the sum paid for sending the message, unless a special agreement for insurance be made in writing, and the amount of risk specified on this agreement and paid for at the time of sending the message. Nor will the company be responsible for any error or delay in the transmission or delivery, or for the non-delivery of an *unrepeated* message, beyond the amount paid for sending the same, unless in like manner specially insured, and amount of risk stated thereon, and paid for at the time.'

" If this regulation is valid, there is obviously an end of the plaintiff's case. It is conceded that he knew of the rule, and did not require the message to be repeated. He cannot, therefore, make the defendants answerable in damages consistently with the

28 P. F. SMITH—16

[Passmore *v.* Western Union Telegraph Co.]

terms to which he tacitly agreed.   It is a general principle that a man who seeks to enforce a contract, shall not recover more than the contract gives.   It is for him to consider, in entering into the obligation, what shall be the limit of the liability on the other side.   If he assents to a provision that the opposite party shall not be answerable in a given case, or unless certain conditions are fulfilled, he cannot rely on the disadvantageous result of the bargain as a reason for relief.

"This consideration might be conclusive, if the action were *ex contractu*, or founded solely on the agreement between the plaintiff and defendants.   Such, however, is not the case.   It is an action *ex delicto* for the breach of a duty which the defendants owe to every man, to receive the messages which he may wish to send, and transmit them to their destination.   This obligation was anterior to the contract, and is not necessarily susceptible of being modified by it.   Having its foundation in a rule of law, it cannot be varied or restricted, except in subordination to the principles on which the rule depends.   The maxim *quilibet potest renunciare juri pro se introducto,* does not apply when the right in question is conferred on the individual with a view to his protection and for the common good.

"The plaintiff calls for the application of this doctrine to the case in hand.   The condition against liability for unrepeated messages, is in his eyes, one which the defendants could not legally impose.   It is, as he contends, virtually a stipulation for immunity against the consequences of their own negligence, and therefore invalid.

"If such be the nature of the regulation, it cannot operate as a defence.   The defendants are public agents, and as such bound to the exact diligence which is the condition precedent of all faithful service.   Their charter was not conferred upon them merely as a means whereby gain might accrue without the risk incident to individual responsibility.   It is a great and beneficial franchise confided to their hands for the better attainment of an object in which the community at large are interested.   They are, therefore, not less than a railway company or a corporation organized to supply gas or water, under an obligation to exercise their peculiar function in a way to obtain the end proposed, and must respond in damages to every one who is injured by a want of due care on their part, or on that of the agents whom they employ.   This, as the case of The Telegraph Co. *v.* Dryburg, 35 Penna. 298, indicates, is true, not only as it regards those who contract with them, but of third persons, who having entered into no relation of contract, are yet injured by their negligence.

"The fundamental truth of the plaintiff's contention, is therefore undeniable; but like most truths, it is limited by other and collateral principles.   A railway, telegraph or other company

charged with a duty which concerns the public interest, cannot screen themselves from liability for negligence, but they may prescribe rules calculated to insure safety, and diminish the loss in the event of accident, and declare that if these are not observed, the injured party shall be considered as in default, and precluded by the doctrine of contributory negligence/ The rule must, however, be such, as that reason, which is said to be the life of the law, can approve; or at the least, such as it need not condemn. By no device can a body corporate avoid liability for fraud, for wilful wrong, or for the gross negligence which, if it does not intend to occasion injury, is reckless of consequences, and transcends the bounds of right with full knowledge that mischief may ensue. Nor, as I am inclined to think, will any stipulation against liability be valid, which has the pecuniary interest of the corporation as its sole object, and takes a safeguard from the public without giving anything in return. But a rule, which, in marking out a path plain and easily accessible, as that in which the company guarantees that every one shall be secure, declares that if any man prefers to walk outside of it, they will accompany him, will do their best to secure and protect him, but will not be insurers, will not consent to be responsible for accidents arising from fortuitous and unexpected causes, or even from a want of care and watchfulness on the part of their agents, may be a reasonable rule, and as such upheld by the courts.

" Applying this test to the case in hand, does the evidence disclose any sufficient ground for overruling a defence which is primâ facie valid? The burden of proof is on the plaintiff. It is for him to show in what respect a regulation which he tacitly accepted, is so far hostile to the interests of the community, or of that portion of it which uses telegraphy as a means of communication, that the law should not suffer it to stand. Unless this is so clear as to be legally indisputable, the judiciary should obviously refrain from interfering with the contract as framed by the parties, and refer the subject to the legislature, who can at any time regulate the whole by statute.

" We are fully aware of the importance of the question, and have no desire to relax the just measure of accountability in cases of this description. Telegraphy, like the other powerful instruments which science has placed at the disposal of man, is capable of being a source of injury instead of benefit. That the intelligence which it conveys is prompt, will serve no good purpose if mistakes occur during the process of transmission. The difficulty of avoiding them is, notwithstanding, greater than might at first appear. The function of the telegraph differs from that of the post-office in this, that while the latter is not concerned with the contents of the missive, and merely agrees to forward it to its address, the former undertakes the much more difficult task of

[Passmore *v.* Western Union Telegraph Co.]

transcribing a message written according to one method of nota-
tion, in characters which are entirely different, with all the liability
to error necessarily incident to such a process. Nor is this all.
The telegraph operator is separated by a distance of many miles
from the paper on which he writes, so that his eye cannot discern
and correct the mistakes committed by his hand. It was also con-
tended during the argument, that the electric fluid which is used
as the medium of communication, is liable to perturbations arising
from thunder-storms, and other natural causes. It is, therefore,
obvious that entire accuracy cannot always be obtained by the
greatest care, and that the only method of avoiding error is to
compare the copy with the original, or in other words, that the
operator to whom the message is sent should telegraph it back to
the station whence it came.

" So far the inquiry is plain ; but here a question of some diffi-
culty presents itself. Should every message be repeated, or only
those which are of sufficient importance to make such a precaution
requisite? In answering this question it must be remembered that
the repetition of a message necessarily involves delay and expense.
The mail may transmit any number of letters simultaneously, but
a telegram has exclusive possession of the wires during its passage
over the line. While one message is repeated, others are delayed,
which may at times be of serious consequence. There is, more-
over, an increase of cost, which, though trivial in each instance,
would be formidable in the aggregate, and necessarily augment
the rate of charging in a ratio which has been roughly calculated
at one-half. Such must be the result, if every one who wishes to
engage rooms at an hotel, or put a question of friendly interest,
must submit to the expense and possible delay of repetition.

" On the other hand, the convenience of the opposite course is
not less manifest. Instead of passing every message twice over
the line, those only are to be repeated which from their importance
demand peculiar care. And as the company cannot know what
telegrams fall within this category, the question is referred to the
person chiefly interested. Obviously he who sends a communica-
tion is best qualified to judge whether it should be returned for
correction. If he asks the company to repeat the message, and
they fail to comply, they will clearly be answerable for any injury
that may result from the omission. If he does not make such a
request, he may well be taken to have acquiesced in the conditions
which they prescribe, and at all events cannot object to the want
of a precaution he has virtually waived. It is not a just ground
of complaint that the power to choose is coupled with an obliga-
tion to pay an additional sum to cover the cost of repetition. If
it were not, the company would in all probability be called on to
repeat every message, with the inevitable result of putting the pub-
lic to an increased expense, without any corresponding gain.

[Passmore *v.* Western Union Telegraph Co.]

" We are, therefore, inclined to think that the regulation in question, or at least so much of it as has been considered in this opinion, is well calculated to reconcile the economy and dispatch which the mass of the community principally desire, with the security against accident which each individual is entitled to demand. But we limit ourselves to saying that it is not so far contrary to private interest or the public good, as to justify a court of justice in pronouncing it invalid.

" We have not arrived at this conclusion without a just diffidence arising from the novelty of the subject and the want of any controlling authority in this state. But it is satisfactory to know that the principles set forth above are sustained by the judgment of the Supreme Court of Massachusetts, in Ellis *v.* The Telegraph Co., 13 Allen 226 ; and also by that rendered in Camp *v.* The Telegraph Co., 2 Metc. (Ky.) 164.

" We do not think it requisite to notice the second point, beyond saying that it presents a nice question, about which the books do not agree : see Parris's Case, Law Rep. 7 Chan. App. 587 ; and the British and American Telegraph Co. *v.* Colson, Law Rep. 6 Exch. 108. The fair deduction from the authorities seems to be, that although an offer made through the post office becomes binding as soon as the assent of the person to whom it is addressed is signified by mailing a reply, the contract is still subject to this condition, that the letter of acceptance shall reach its destination ; and will fail if the opposite party does not receive notice within a reasonable time in that or some other way. The principle is the same, when a telegram is altered in passing over the line, and misleads a purchaser. We do not, however, express any opinion on this head, and leave it for the consideration of the court above. In deciding that the company is not answerable for unrepeated messages, we have in effect disposed of the whole controversy, and judgment is consequently entered for the defendants on the points reserved.

" Judgment for defendants."

*J. C. Longstreth* and *L. Myers,* for plaintiff in error.—The liability of telegraph companies is that of common carriers : Shearman & Redfield on Negligence, sect. 554 ; Parks *v.* Alta California Tel. Co., 13 Cal. 422 ; De Rutte *v.* N. Y., Alb. & Buf. Tel. Co., 1 Daly's R. 547 ; Telegraph Co. *v.* Dryburg, 11 Casey 298 ; Tyler *v.* W. Union Tel. Co., 60 Ill. 421.

*G. L. Crawford* and *B. H. Brewster,* for defendants in error.— The liability of the defendants is not that of common carriers but on the contract only : Playford *v.* U. K. Tel. Co., Law Rep. 4 Q. B. 707 ; Leonard & Burton *v.* N. Y., Alb. & Buf. Tel. Co., 41 N. Y. 554 ; Birney *v.* N. Y. & Wash. Tel. Co., 18 Md. 341 ; Camp *v.*

[Passmore *v.* Western Union Telegraph Co.]

W. U. Tel. Co., 1 Metc. (Ky.) 164 ; Breeze *v.* U. S. Tel. Co., 45 Barb. 274 ; Shields *v.* U. S. & N. O. Tel. Co., 11 Am. L. J. 311 ; Ellis *v.* Am. Tel. Co., 13 Allen 227 ; De Rutte *v.* N. Y., Alb. & Buf. Tel. Co., 1 Daly 547 ; W. U. Tel. Co. *v.* Carew, 15 Mich. 525 ; Graham *v.* W. U. Tel. Co., 10 Am. Law Rep. N. S. 319.

The liability of a telegraph results from the general principle that where one is injured in consequence of another neglecting to do that which he ought to have done, the latter is liable for the injury : Smith's Manual of Common Law 101–2* ; Vandenburgh *v.* Traux, 4 Denio 464 : Rose *v.* U. S. Tel. Co., 6 Robertson 305.

Common carriers may, by special contract, limit their liability as insurers, or for any injury except one arising from their own negligence, and when they so do, they cease to be common carriers, and the onus of establishing negligence is upon the plaintiff : Browne on Carriers 117–8, and note (a.) ; Farnham *v.* C. & A. Railroad Co., 5 P. F. Smith 53 ; Patterson *v.* Clyde, 17 Id. 506 ; Harrison *v.* Railroad Co., 2 B. & S. 122 ; White *v.* Railroad Co., 2 C. B. N. S. 7 ; York Co. *v.* Central Railroad Co., 3 Wall. 111 ; Browne on Carriers 127, 135, 136. The condition as to repetition of message and insurance is reasonable and valid : McAndrew *v.* Electric Tel. Co., 17 C. B. 3 ; 33 Eng. Law & Eq. 180 ; Potts *v.* Electric Tel. Co., 18 Law Rep. 477 ; Camp *v.* W. U. Tel. Co., 1 Metc. (Ky.) 164 ; Breeze *v.* U. S. Tel. Co., 45 Barb. 274 ; Ellis *v.* Am. Tel. Co., 13 Allen 235 ; Gildersleeve *v.* U. S. Tel. Co., How. Pr. 403 ; 29 Md. 232 ; Kinghorne *v.* Montreal Tel. Co., 18 U. C. Rep. 60. If it were even doubtful whether the defendants' negligence alone caused the injury there can be no recovery : Luxford *v.* Large, 5 C. & P. 421.

The judgment was affirmed in the Supreme Court, April — 1875.