H. B. WILLIAMS, Inc., v. WESTERN UNION TELEGRAPH CO.

(District Court, E. D. Pennsylvania. February 6, 1913.)

No. 1,666.

1. TELEGRAPHS AND TELEPHONES (§ 54*)—MESSAGES—MISTAKES IN TRANS-
MISSION—LIMITATION OF LIABILITY—CONTRACTS.

A telegraph company is not a common carrier and is entitled to stip-
ulate for a limitation of its liability in case of mistakes in transmission
of unrepeated messages to an amount equal to the tolls.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§§ 39–47; Dec. Dig. § 54.*]

2. TELEGRAPHS AND TELEPHONES (§ 54*)—MESSAGES—TRANSMISSION—ERRORS
—ORDINARY AND GROSS NEGLIGENCE.

Plaintiff delivered a message to defendant telegraph company for
transmission to defendant's agent notifying him to purchase tomatoes for
shipment "June 5th." The message as delivered read "June 1st," and
by reason of the change the agent was unable to purchase the fruit.
There was evidence that the operator at the receiving station had been
in ill health for several months and that he was negligent in his attend-
ance at the office, but there was no evidence that his illness affected his
ability to receive and transmit messages. Held, that the mistake re-
sulted from ordinary, as distinguished from gross, negligence, and was
within a limitation of the company's liability for mistakes in the case
of unrepeated messages to the tolls paid therefor.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§§ 39–47; Dec. Dig. § 54.*]

3. TELEGRAPHS AND TELEPHONES (§ 33*)—TOLLS—REPEATED AND UNREPEATED
MESSAGES—INTERSTATE COMMERCE ACT.

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 [U.
S. Comp. St. 1901, p. 3154]) as amended (Act June 29, 1906, c. 3591, § 1,
34 Stat. 584 [U. S. Comp. St. Supp. 1911, p. 1288]), providing that mes-
sages by telegraph may be classified into day, night, repeated, unrepeated,
letter, commercial, press, government, and such other classes as are just
and reasonable, and different rates may be charged for the different
classes of messages, recognizes the right of a telegraph company to
charge for repeated messages different rates from those charged for
unrepeated messages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 21; Dec. Dig. § 33.*]

4. TELEGRAPHS AND TELEPHONES (§ 26*)—REGULATIONS—REASONABLENESS.

In an action against a telegraph company for alleged negligence in
transmission of a telegram, the unreasonableness of a rule as to repeti-
tion of messages cannot be first considered in the District Court, but
must be first raised before the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent.
Dig. § 14; Dec. Dig. § 26.*]

Action by H. B. Williams, Incorporated, against the Western Union
Telegraph Company. On motion for a new trial and for judgment
non obstante veredicto. Judgment non obstante granted.

George P. Rich, of Philadelphia, Pa., for plaintiff.
H. B. Gill, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This suit was brought to recover
from the Western Union Telegraph Company damages for loss of

contracts with tomato growers in Florida for the purchase of growing crops of tomatoes to be delivered in the future, by reason of the alleged gross negligence of the defendant in the sending of a telegram from the plaintiff to its purchasing agent at Palmetto, Fla.

It appeared at the trial that the plaintiff, after a series of communications by telegram sent through the defendant company, was informed that certain tomato growers in Florida would sell their growing crops to be shipped by June 5, 1911, and, on April 18, 1911, delivered a message to be telegraphed by the defendant as follows:

"James E. Taylor, Palmetto, Florida. Buy three thousand fail must be graded same as east coast buy two thousand more best terms buy only early patches must be all shipped June fifth to be paid for when loaded.
"H. B. Williams, Inc."

The word "fail," according to a secret code between the plaintiff and its agent, meant "Brown," one of the parties with whom the agent had been negotiating for a sale of his growing crop. In the telegram as delivered to plaintiff's agent, Taylor, the word "first" was substituted for "fifth."

The testimony showed that Taylor had obtained offers of tomatoes to be shipped June 5th from two growers, Brown and Reeder, and that, upon receipt of the telegram, he informed the parties that his principals would buy the tomatoes to be shipped June 1st, and that the parties refused to sell deliverable at that time. Taylor did not make any further efforts to procure tomatoes, and, according to his testimony and that of other witnesses, the price of tomatoes rose so that it was impossible to purchase except at higher prices, and he was instructed by the plaintiff to leave the vicinity and buy cucumbers, beans, and lettuce. The plaintiff called witnesses to prove the difference in the price of tomatoes owing to the rise in the market at Palmetto and claimed as damages the difference between the price at which the tomatoes were offered and the market price thereafter. The jury returned a verdict in favor of the plaintiff for $1,000. The defendant moved for a new trial and, having moved at the trial for binding instructions, moved for judgment non obstante veredicto under the provisions of the Act of Assembly of Pennsylvania of April 22, 1905 (Laws 1905, p. 286).

The telegram in which the error was made was upon a regular form of the Western Union Telegraph Company, which contained at the top the following words:

"Send the following message subject to the terms on back hereof, which are hereby agreed to."

Upon the reverse side were printed a number of stipulations, among which were the following:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such. In consideration whereof it is agreed between the sender of the message and this company as follows:

"(1) The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message, beyond

the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages.

"(2) In any event, the company shall not be liable for damages for any mistakes or delay in the transmission or delivery or for the nondelivery of this message, whether caused by the negligence of its servants, or otherwise, beyond the sum of $50, at which amount this message is hereby valued, unless a greater value be stated in writing hereon at the time the message is offered to the company for transmission, and an additional sum paid or agreed to be paid on such value, equal to one-tenth of one per cent. thereof."

[1] The position of the defendant's counsel in support of his motion non obstante veredicto is that, under the terms of the telegram, the defendant company is not liable in damages for its error beyond the amount paid for the telegram because the message was unrepeated; that there was no evidence that the plaintiff suffered any amount of damage because of the error in the message; and that there was no evidence of any negligence beyond ordinary negligence upon the part of the defendant. The stipulation in relation to unrepeated messages that the company shall not be liable for mistakes or delays beyond the amount received for sending the same is substantially the same stipulation which was before the Supreme Court in the case of Primrose v. Western Union Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883. In that case the Supreme Court held, citing Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556, and Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067, that telegraph companies are not common carriers; that their duties are different and performed in different ways and they are not subject to the same liabilities; that they are not bailees in any sense; that they are intrusted with nothing but an order or message, which is not to be carried in the form or characters in which it is received, but is to be translated and transmitted through different symbols by means of electricity, and is peculiarly liable to mistakes; and that the measure of damages, for a failure to transmit or deliver it, has no relation to any value of the message itself, except as such value may be disclosed by the message, or be agreed between the sender and the company, citing Hart v. Pennsylvania Railroad, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, reaffirmed in Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. —— (Oct. T. 1912, Jan. 6, 1913), where it is held that a common carrier of goods may, by special contract with the owner fairly made, giving the shipper the advantage of a lower rate, restrict the sum for which it may be liable, even in case of a loss by the carrier's negligence. The court held:

"By the regulation now in question, the telegraph company has not undertaken to wholly exempt itself from liability for negligence, but only to require the sender of the message to have it repeated, and to pay half as much again as the usual price, in order to hold the company liable for mistakes or delays in transmitting or delivering, or for not delivering, a message, whether happening by negligence of its servants, or otherwise."

The court cites the opinion of Judge Hare in Passmore v. Western Union Telegraph Co., 9 Phila. (Pa.) 90, and 78 Pa. 238. The lan-

guage in the concluding part of the quotation of Judge Hare's opinion is:

"Obviously he who sends a communication is best qualified to judge whether it should be returned for correction. If he asks the company to repeat the message, and they fail to comply, they will clearly be answerable for any injury that may result from the omission. If he does not make such a request, he may well be taken to have acquiesced in the conditions which they prescribe, and at all events cannot object to the want of a precaution he has virtually waived. It is not a just ground of complaint that the power to choose is coupled with an obligation to pay an additional sum to cover the cost of repetition."

In distinguishing the case of Tyler v. Western Union Telegraph Co., 60 Ill. 421, 14 Am. Rep. 38, where the court held that the regulation requiring the message to be repeated, printed on the blank of the company on which a message is written, is not a contract binding in law, for the reason that the law imposed upon the companies duties to be performed to the public, and for the performance of which they were entitled to a compensation fixed by themselves, and which the sender had no choice but to pay, no matter how exorbitant it might be, the Supreme Court held:

"The fallacy in that reasoning appears to us to be in the assumption that the company, under its admitted power to fix a reasonable rate of compensation, establishes the usual rate as the compensation for the duty of transmitting any message whatever. Whereas, what the company has done is to fix that rate for those messages only which are transmitted at the risk of the sender, and to require payment of the higher rate of half as much again if the company is to be liable for mistakes or delays in the transmission or delivery or in the nondelivery of a message. * * * There can be no doubt, therefore, that the terms on the back of the message, so far as they were not inconsistent with law, formed part of the contract between him and the company under which the message was transmitted."

The message under consideration in that case was a cipher message, and in discussing the stipulation as to cipher messages the court said:

"But it certainly was a cipher message; and to hold that the acceptance by the defendant's operator at Philadelphia made the company liable for errors in its transmission would not only disregard the express stipulation that no employé of the company could vary the conditions of the contract, but would wholly nullify the condition as to cipher messages, for the fact that any message is written in cipher must be apparent to every reader. Beyond this, *under any contract* to transmit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated, when making the contract, as likely to result from its breach. This was directly adjudged in Western Union Telegraph Co. v. Hall, 124 U. S. 444 [8 Sup. Ct. 577, 31 L. Ed. 479]."

The conclusion of the Supreme Court in brief is that a stipulation such as that in the case at bar, providing that the company shall not be liable for mistakes in transmission or delivery beyond the sum received for sending it unless the sender orders it to be repeated, is reasonable and valid, and that the recovery cannot exceed the amount agreed upon in that stipulation.

[2] The plaintiff, however, contends that, while the defendant may protect itself by such a stipulation from ordinary negligence, it cannot

in that way limit its liability for gross negligence. The distinction between "ordinary negligence" and "gross negligence" was discussed by the Supreme Court in the case of Milwaukee & St. Paul Railway Co. v. Arms et al., 91 U. S. 489, 23 L. Ed. 374, as follows:

"'Gross negligence' is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence'; but, after all, it means the absence of the care that was necessary under the circumstances. In this sense the collision in controversy was the result of gross negligence, because the employés of the company did not use the care that was required to avoid the accident. But the absence of this care, whether called gross or ordinary negligence, did not authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted. To do this, there must have been *some willful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences.* Nothing of this kind can be imputed to the persons in charge of the train, and the court therefore misdirected the jury."

As was said by Judge Hare in the Passmore Case cited by the Supreme Court in Primrose v. Western Union Telegraph Co., supra:

"A railway, telegraph, or other company, charged with a duty which concerns the public interest, cannot screen themselves from liability for negligence; but they may prescribe rules calculated to insure safety, and diminish the loss in the event of accident, and declare that, if these are not observed, the injured party shall be considered as in default, and precluded by the doctrine of contributory negligence. The rule must, however, be such as that reason, which is said to be the life of the law, can approve; or, at the least, such as it need not condemn. By no device can a body corporate avoid liability for fraud, for willful wrong, or for the gross negligence which, *if it does not intend to occasion injury, is reckless of consequences, and transcends the bounds of right with full knowledge that mischief may ensue.*"

Under the definition of gross negligence in the Arms Case, and upon a careful consideration of the evidence, I am convinced that the jury would not have been justified in finding more than ordinary negligence in the case at bar. To sustain the charge of gross negligence, it was shown by the plaintiff that errors in words had been made in other messages transmitted through the defendant company, and, in order to show the negligence of the company in the selection of its agent, it was shown that the operator at Palmetto had been under the treatment of a physician at times during the preceding months for indigestion and had been suffering from heart trouble; that he sometimes stayed away from the office, and the plaintiff's agent would be obliged to send messages through the railroad telegraph operator at Palmetto. No evidence was offered to show how the sort of ill health suffered by the defendant's agent would affect his ability to receive and transmit messages. The errors which were shown to have occurred in telegrams were such as must have been intended to be provided for by the stipulation limiting liability in the case of unrepeated messages. The plaintiff, having knowledge of all of the facts, was in a better position to know of the importance of the telegram sent than were the agents of the defendant and could by paying one-half of the cost of the telegram in excess of that paid have protected itself from the error which occurred. The fact that the error occurred was not in itself evidence of negligence; the most skillful operator may

make mistakes, and there was nothing in the telegram itself to put the defendant upon notice which would require it to exercise unusual care in transmission in view of the plaintiff's assent to the stipulation as to unrepeated messages. There was no evidence of willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

[3] At the argument the plaintiff raised a further contention that under section 20 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3170]) the stipulation under which the message was sent was an unreasonable one and therefore unlawful. Inasmuch as section 1 of the act, as amended by Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1911, p. 1288), which brings telegraph companies within its provisions, expressly provides that messages by telegraph may be classified into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages, it is apparent that the Interstate Commerce Act expressly recognizes the right of the telegraph company to charge for repeated messages different rates from those charged for unrepeated messages.

[4] Even if the plaintiff's case were based upon an alleged unreasonable regulation, which it is not on the pleadings, it is a question which cannot be entertained primarily in this court. The question must be first raised before the Interstate Commerce Commission. Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Baltimore & Ohio R. R. Co. v. United States ex rel. Pitcairn Coal Co., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292.

The plaintiff's statement claims for the profits which the plaintiff would have realized from the advance in price, and does not claim the cost of sending the message, nor was the cost of sending the message proved upon the trial. Under the decisions in the cases above cited, I am of the opinion that the plaintiff was bound by the stipulation in relation to unrepeated messages; that the damages claimed cannot be held to have been contemplated by the parties in case of breach of the contract; that the plaintiff is not entitled to recover beyond the amount paid for transmitting the message, which has not been proved; further, that there is no proof of the gross negligence alleged as a basis of the plaintiff's claim for damages.

In view of these conclusions, it is not necessary to consider the sufficiency of the proof of damage caused by alleged loss of the contracts. The defendant's request for binding instructions should, in my opinion, have been allowed.

Judgment will therefore be entered for the defendant non obstante veredicto upon the whole record and the evidence certified and filed. An exception will be granted to the plaintiff.