ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAIL-
WAY COMPANY *v.* EDWARDS.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 123.  Submitted January 20, 1913.—Decided February 24, 1913.

Action by Congress on a subject within its domain under the commerce clause of the Constitution results in excluding the States from acting on that subject.

As applied to interstate shipments, the State cannot now impose penalties for delay in delivery to consignee, as Congress has acted on that subject by the passage of the Hepburn Act. *Chicago, R. I. & Pac. Ry. Co.* v. *Hardwick Elevator Co.,* 226 U. S. 426.

The so-called Demurrage Statute of 1907 of Arkansas requiring railroad companies to give notice to consignees of arrival of shipments and penalizing them for non-compliance is an unconstitutional interference with interstate commerce so far as interstate shipments are concerned.

94 Arkansas, 394, reversed.

THE facts, which involve the constitutionality under the commerce clause of the Constitution of the United

States of the Arkansas Demurrage Statute, are stated in the opinion.

*Mr. Martin L. Clardy, Mr. H. G. Herbel, Mr. Lovick P. Miles* and *Mr. Thos. B. Pryor* for plaintiff in error:

The act is an attempt to exercise jurisdiction over interstate commerce in matters which have been the subject of action by Congress and also by the Interstate Commerce Commission. Section 17 of the act expressly provides that interstate railroads shall furnish cars on application for interstate shipments, the same in all respects as other cars are to be furnished by interstate railroads under the provisions of this act. This section is merely referred to to emphasize the fact that the entire act makes no distinction between commerce within the State and that between States. The validity of this act is now involved in the case of *Hampton* v. *St. Louis, I. M. & S. Ry. Co.,* (see *post,* p. 458) which has been submitted to this court, and the authorities to sustain the contention of the invalidity of the act are collated in the brief filed on behalf of defendant in error in that case. The case cited by the Supreme Court of Arkansas, 12 I. C. C. Rep. 61, is certainly overruled by the case of *Wilson Produce Co.* v. *Railway,* 14 I. C. C. Rep. 170, and in the later case of *Peel & Co.* v. *Railway,* 18 I. C. C. Rep. 33, and the rule adopted by the commission above referred to. The other cases cited in the opinion below are not controlling as the same question was not involved.

The act in question finds no support in the decisions referred to in the opinion of the Supreme Court of Arkansas; and see the opinion of that court when this act was for the first time under consideration correctly stating the law in *Oliver* v. *C., R. I. & P. Ry. Co.,* 89 Arkansas, 468.

Congress has legislated upon the question involved; the Interstate Commerce Commission has exercised jurisdic-

tion thereof, and all state statutes affecting the subject when applied to interstate commerce must give way. *Shephard* v. *Northern Pacific Ry. Co.*, 184 Fed. Rep. 770; *Rhodes* v. *State of Iowa*, 170 U. S. 412; *McNeill* v. *Railway Co.*, 202 U. S. 561. See Barnes on Interstate Transp., § 276.

No appearance for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This writ of error is prosecuted to secure the reversal of a judgment for seventy-five dollars, the amount of penalties imposed upon the plaintiff in error for delay in giving notice to the consignee, defendant in error, of the arrival of a carload of freight at the termination of an interstate commerce shipment. The exaction was authorized by § 3 of a law of the State of Arkansas, approved April 19, 1907 (Act 193, Acts of 1907, p. 453), entitled "An Act to regulate freight transportation of railroad companies doing business in the State of Arkansas." The section is copied in the margin.[1]

---

[1] SEC. 3. Railroad companies shall, within twenty-four hours after the arrival of shipments, give notice, by mail or otherwise, to consignee. of the arrival of shipments, together with the weight and amount of freight charges due thereof; and where goods or freight in carload quantities arrive, such notices shall contain also identifying numbers, letters and initials of the car or cars, and if transferred in transit, the number and initials of the car in which originally shipped. Any railroad company failing to give such notice shall forfeit and pay to the shipper, or other party whose interest is affected, the sum of five dollars per car per day, or fraction of a day's delay, on all carload shipments, and one cent per hundred pounds per day, or fraction thereof, on freight in less than carloads, with a minimum charge of five cents for any one package, after the expiration of the said twenty-four hours; *provided*, that not more than five dollars per day be charged for any one consignment not in excess of a carload.

The right to impose the penalty was challenged and the validity of the section of the statute authorizing it was assailed by demurrer on the ground of repugnancy to the commerce clause of the Constitution of the United States. The question here for decision is whether the court below was right in overruling the Federal defense which was thus relied upon. 94 Arkansas, 394.

The Arkansas statute is styled in the opinion of the court below "the Demurrage Statute," and the penalty imposed by § 3 is referred to as a "demurrage charge." And in the same connection it is observed "There are other sections of the statute imposing demurrage charges on consignees for failure to remove freight, thus making the burdens of the whole statute reciprocal." It follows that the section under consideration was but intended to subject carriers to the penalties which the section provides because of a failure to make prompt delivery of freight on arrival at destination. As applied to interstate commerce, however, we think such penalties were not enforceable because of a want of power in the State to impose them in view of the legislation of Congress existing at the time the alleged duty to give notice arose. Recently in *Chicago, Rock Island & Pacific Railway Co. v. Hardwick Farmers' Elevator Company*, 226 U. S. 426, a regulation of the State of Minnesota enacted after the passage of the Hepburn Act imposing penalties on carriers for failing on demand to furnish a supply of cars for the movement of interstate traffic was held invalid because of the absence of power in a State in consequence of the Hepburn Act to provide for such penalties. While the case before us concerns the power of a State over the delivery of cars in consummation of an interstate shipment, we nevertheless think that the *Hardwick Case* is controlling because the legislation of Congress as clearly excludes the right of a State to penalize for failure to deliver interstate freight at the termination of an interstate shipment as it was

found to prevent a State from penalizing for failure to furnish cars for the initiation of the movement of interstate traffic. This conclusion is necessary since the amendment to § 1 of the Act to Regulate Commerce by which a definition is given to the term transportation and which in the *Hardwick Case* was held to exclude the right of a State to penalize for the non-delivery of cars to initiate the movement of an interstate shipment, by its very terms embraces the obligation of a carrier to deliver to the consignee, and therefore by the same token excludes the right of a State to penalize on that subject. The provision of the Hepburn Act in question is copied in the margin.[1]

We are referred in argument to no other provision of the act tending in the slightest degree to indicate that the duties which were united by the provisions of one section of the act were divorced by another and were made therefore subject to the possibility of varying and it may be conflicting state penalties. On the contrary, in this instance as in the one considered in the *Hardwick Case*, the context of the act adds strength to the conviction produced by the definition of the first section, and therefore gives rise to the conviction that the context of the statute, not only as was held in the *Hardwick Case*, excludes the right of a State to regulate by penalties or demurrage charges the obligation of furnishing the means of interstate transportation, but also excludes power in a State to impose penalties as a means of compelling the per-

[1] . . . the term "transportation" shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported; and it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto.

formance of the duty to promptly deliver in consummation of such transportation.

The judgment of the Supreme Court of Arkansas is reversed with costs, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*