HASKELL IMPLEMENT AND SEED COMPANY

*vs.*

POSTAL TELEGRAPH-CABLE COMPANY.

Androscoggin.    Opinion December 28, 1915.

*Dispatch.    Exceptions.    Message.    Mistake.    Negligence.    Telegraph.*

Action to recover damages for a mistake in the transmission of a message from Lewiston, Maine to Moline, Illinois.

*Held:*

1. That the provision in the contract that "the company is made the agent of the sender without liability to forward any message over the lines of any other company when necessary to reach its destination," cannot on that account be construed or held to relieve the defendant from liability to the extent of the payment of the cost of original transmission. It is clear that the parties did not so intend. The refusal to direct a verdict for the defendant was correct.

2. The defendant was not liable for any greater sum than the amount named for sending the message.

On exceptions by the defendant.    Exceptions sustained.

This is an action to recover damages for the alleged failure of defendant to accurately transmit and deliver a telegram left with it at its Lewiston office by plaintiff for transmission to Moline, in the state of Illinois.    Upon the conclusion of the evidence, the court directed the jury to return a verdict for plaintiff for $106.50.    To which ruling and instructions the defendant excepts.

The case is stated in the opinion.

*Tascus Atwood,* for plaintiff.

*White & Carter,* for defendant.

SITTING:    SAVAGE, C. J., SPEAR, BIRD, HALEY, HANSON, JJ.

HANSON, J.    This is an action to recover damages for a mistake in the transmission of a message from Lewiston, Maine, to Moline,

Illinois. The writ was dated December 19, 1913. The case was tried at the January term, 1915. The presiding Justice directed a verdict for the plaintiff for $106.50, and the case is here upon defendant's exceptions to such order, and other grounds stated in the exceptions as follows:

"Upon the conclusion of the evidence the defendant moved that a verdict be directed for it. This motion was overruled by the court. The defendant then requested the court to instruct the jury that the plaintiff was not entitled to recover more than the sum of sixty-eight (68) cents, being the amount paid for sending the message. The court refused to give this instruction. The court then directed the jury to return a verdict for the plaintiff for the sum of one hundred six dollars and fifty cents ($106.50), it being admitted that if the plaintiff was entitled to recover more than sixty-eight (68) cents, this sum of one hundred six dollars and fifty cents ($106.50) fixed by the court, was correct.

To which rulings and instructions and refusals to instruct the defendant excepts and prays that its exceptions may be allowed."

The material parts of the blank supplied by the defendant with the message in question follows:

### "POSTAL TELEGRPH—COMMERCIAL CABLE

#### Clarence H. McKay, President

#### NIGHT TELEGRAM

Delivered 6.24          Received at B.          16 Red Chgd.

The Postal Telegraph-Cable Company (Incorporated) transmits and delivers night messages subject to the terms and conditions printed on the back of this blank.

#### Design Patent Applied For

(Chge Haskell Co.)          Lewiston, Me., Oct. 21, 1912

B—7624     Design Patent No. 40529

Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to.

Oct. 21, 1912

To Deere & Co.
    Moline, Ill.

Have gotten five Thousand better price will leave for Moline Tuesday night unless you request otherwise.

B 50
A. M. & M. Y.
6.39 P.

E. P. Webster.

. . . . . . .

To guard against mistakes or delays, the sender of a message should order it REPEATED; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. . . . It is agreed between the sender of the message written on the face hereof and the Postal Telegraph-Cable Company, that said Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED message beyond fifty times the sum received for sending the same, unless specially valued, nor in any case for delays arising from unavoidable interruption in the working of its lines, nor for errors in cipher or obscure messages. In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the non-delivery of this message, whether caused by the negligence of its servants or otherwise, beyond fifty times the repeated message rate, at which amount this message, if sent as a repeated message, is hereby valued, unless a greater value is stated in writing hereon at the time the message is offered to the Company for transmission and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent thereof. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other Company when necessary to reach its destination."

The message delivered to the correspondent in Moline was as follows: "Have gotten five Thousand better price will leave for

Moline Thursday night unless you request otherwise." The word "Thursday" was written in place of "Tuesday," after the telegram left the line of the defendant company, and while in the course of transmission over the line of a connecting company, and the plaintiff alleges that the damages sued for resulted directly from the error above mentioned. In his brief, counsel for the plaintiff in support of his contention relies entirely on the rule laid down in *Ayer* v. *Telegraph Company,* 79 Maine, 493, a case presenting the same question, but differing widely in the facts involved, and in the wording of the contract in evidence. In that case a lot of laths were offered to a Philadelphia correspondent in a telegram sent in these words: "Will sell 800 M laths delivered at your wharf, two ten net cash July shipment. Answer quick." The telegram was received with the word "ten" omitted. The offer was accepted, and the plaintiff, on account of the error, lost $80, for which he brought action. The defendant in that case offered no evidence, and, quoting from the opinion, "did not undertake to account for, or explain the mistake in transmission of the message. The presumption therefore is, that the mistake resulted from the fault of the telegraph company. We cannot consider the possibility that it may have resulted from causes beyond the control of the company. In the absence of evidence on that point we must assume that for such an error the company was in fault."

"The fault and consequent liability of the defendant company being thus established, the only remaining question is the extent of that liability in this case. The plaintiff claims, it extends to the difference between the market price of the laths, and the price at which they were shipped. The defendant claims its liability is limited to the amount paid for the transmission of the message. It claims this limitation on two grounds. 1. The company relies upon a stipulation made by it with the plaintiff, as follows: 'All messages taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a message should order it *repeated;* that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message, and this company, that said company shall not be liable for mistakes or delays in the transmission, or delivery, or for non-delivery of

any unrepeated message, whether happening by *negligence of its servants, or otherwise,* beyond the amount received for sending the same.' " And then the court asked the question: "Is such a stipulation, in the contract of transmission, valid, as a matter of contract assented to by the parties, or is it void as against public policy?" The court answered in no uncertain terms, "We think it is void."

It is obvious that the Ayer case cannot be accepted as controlling in this case; the facts are not the same, and the terms of the contract differ in a most important particular. It will be observed that such difference was the real basis of the opinion, and the various expressions therein in relation to individuals, corporations and the public, which were based upon the facts in the case, were then appropriate and applicable, where the sender of the message agreed that the company "shall not be liable for mistakes," etc., . . . "whether happening by the negligence of its servants or otherwise, beyond the amount received for sending the same." The case found the defendant negligent, and confidently resisting the plaintiff's claims because the plaintiff had agreed as above, not to claim in case of negligence. The result in that case need not, and will not be questioned here. The reasoning there as to contracts of individuals attempting to evade or avoid the consequences of their own negligence was but a repetition of the wisdom of cases supporting the rule from earliest times, and reasserting the policy of the law independently of statute regulation, and it is not perceived that any recent legislation, Federal or State, has been enacted transforming negligence into license, or creating a channel through which liability therefor may be avoided by contract, or otherwise permitting a person to take advantage of his own wrong. *Young* v. *M. C. R. R.,* 113 Maine, 13; *Buckley* v. *B. & A. R. R.,* 113 Maine, 164. It will be seen that the contract in suit differs from that in the Ayer case, and the words limiting liability for negligence have a stipulation as to damages accompanying them, beyond the charge for transmission. The decision in the Ayer case was reached in 1887, and contained no reference to, and was not affected by the Interstate Commerce Act of that year, for the reason that said Act did not then relate to telegraph, telephone, and cable companies doing an interstate business. The rule and policy therein emphasized controlled procedure and practice in this State until June 18, 1910, when an amendment

to the Interstate Commerce Act was passed. The portions applying here read:

"The provisions of this Act shall apply to—telegraph, telephone and cable companies (whether wire or wireless) engaged in sending messages from one state, territory, or district of the United States to any other state, territory, or district of the United States, or to any foreign country, who shall be considered and held to be common carriers within the meaning and purpose of this Act."    .    .    .

"All charges made for any service rendered or to be rendered in the transportation of passengers or property and for the transmission of messages by telegraph, telephone or cable as aforesaid or any connection therewith shall be just and reasonable; and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful; provided, that messages by telegraph, telephone or cable subject to the provisions of this Act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, government and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages."

Section 3 of this Act as amended, provides: "That it shall be unlawful for any common carrier subject to the provisions of this Act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality or any particular description or traffic in any respect whatsoever or to subject any particular person, company, firm, corporation or locality or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Section 15 of the Act as amended further provides: "That whenever, after full hearing upon a complaint made as provided in section 13 of this Act, or after full hearing under an order for investigation and hearing made by the Commission on its own initiative (either in extension of any pending complaint or without any complaint whatever), the Commission shall be of opinion that any individual or joint rates or charges whatsoever demanded, charged or collected by *any common carrier or carriers subject to the provision of this Act for the transportation of persons or property or for the transmission of messages by telegraph or telephone,* as defined in

the first section of this Act, *or that any individual or joint classification, regulations, or practices* whatsoever of such carrier or carriers subject to the provisions of this Act are unjust or unreasonable or unjustly discriminatory, or unduly preferential or prejudicial or otherwise in violation of any of the provisions of this Act, the Commission is hereby authorized and empowered to determine and prescribe what will be the just and reasonable individual or joint rate or rates, charge or charges, and what *individual or joint classification, regulation, or practice,* is just, fair and reasonable to be thereafter followed, and to make an order that the carriers shall cease and desist from such violation to the extent to which the Commission finds the same to exist, and shall not thereafter publish, demand or collect any rate or charge of such transportation or transmission in excess of the maximum rate or charge so prescribed, and *shall adopt the classification and shall conform to and observe the regulation or practice so prescribed,* etc."

The defendant claims it is not liable, because (1) the error, if any, did not happen through any negligence of the defendant; and that (2) in any event its liability is limited to the amount received for sending the message:

1. The case shows that the telegram was received in Boston without error, and was then turned over in regular course to the connecting company. The error occurred after the telegram left the defendant's control, but the provision in that contract that "the company is made the agent of the sender without liability to forward any message over the lines of any other company when necessary to reach its destination," cannot on that account be construed or held to relieve the defendant from liability to the extent of the payment of the cost of original transmission. It is clear that the parties did not so intend. We are of the opinion that the refusal to direct a verdict for the defendant was correct. The first exception is therefore overruled.

2. As to the second exception to the refusal of the presiding Justice to instruct the jury that the plaintiff was not entitled to recover more than sixty-eight cents, the amount paid for sending the message, and the third exception to the direction of a verdict for $106.50, we think both exceptions should be sustained.

In *True* v. *International Telegraph Co.,* 60 Maine, 9, and *Bartlett* v. *Telegraph Co.,* 62 Maine, 209, cited in the Ayer case, supra, the same rule was under consideration. In the latter case, the court, by Danforth, J., said: "It has been held in many cases, that a company may make rules limiting its liability in certain cases, and perhaps it is now too late to deny this proposition, though it seems to be materially enlarging the meaning of the term, when a power given to a corporation or an individual to regulate the manner or method of doing business with the public, is converted into a means of limiting the liability which by law is attached to that business. But however that may be, all courts agree that a rule to be of binding force must be reasonable, whether its purpose is to facilitate business or limit liability. There may be a wide disagreement as to whether any given rule is reasonable, but none, it is believed, as to its want of validity, when its unreasonableness is once conceded." This court at that time (1873) recognized the growing necessity for some definite and final method of determining for all the states the question of reasonableness of rules in like cases, and that a uniform practice should be established emanating from a special source by which all should be governed, and not leave the question to the uncertain and consequent unsatisfactory finding of the courts of the various states in cases as they should arise therein.

Following the decision in *Ayer* v. *Telegraph Co.,* supra, *Primrose* v. *Western Union Telegraph Co.,* 154 U. S., 1, was decided May 26, 1894. It was there held that "a stipulation between a telegraph company and the sender of a message, that the company shall not be liable for mistake in the transmission or delivery of a message, beyond the sum received for sending it, unless the sender orders it to be repeated by being telegraphed back to the originating office for comparison, and pays half the sum in addition, is reasonable and valid." In *Western Union Telegraph Company* v. *Dant,* 42 Appeals, D. C., 398, November 2, 1914, L. R. A. 1915-B. (N. S.), the court had under consideration the question here involved as to limitation of liability for an unrepeated message, and it was held, that "where by statute telegraph messages may be classified and a different rate charged for each class, a condition made part of the contract for transmission, that the company will be liable for mistakes or delays

in non-repeated messages only to the amount paid for their transmission, is valid and enforceable against the sendee."

Many changes have occurred in business and business regulation in the twenty-eight years since the decision in the Ayer case and the creation of the Interstate Commerce Commission. The decision stands, but the Commerce Act has expanded until it comprehends and includes the questions involved in the case at bar, and so including, it must perforce, being the supreme law, suspend the operation of any state statute or regulation, or the force and effect of any decision in opposition thereto, the Ayer case among the rest, so far as they conflict with the Act of June 18, 1910. This rule does no violence to any state, corporation or individual, and is in keeping with the sentiment and reasons underlying sound public policy, the highest good, the best interest of all the people, not that of one state or one locality. Minnesota Rate cases (*Simpson* v. *Shepard,* 230 U. S., 352; 48 L. R. A. (N. S.) 1151; *Sligh* v. *Kirkwood,* 237 U. S., 52.

By the Act of June 18, 1910, telegraph companies have been made common carriers within the meaning, and subject to the provisions of the Interstate Commerce Act. Being so subject, all questions of classification, regulation, and procedure, and especially where, as in this case, the reasonableness of the rules, and charges, and the limitation of liability, are in question, state courts are without jurisdiction, and such cases must be brought in the Federal court, or be submitted for the determination of the Interstate Commerce Commission, as in the case of other common carriers coming within the administrative competency of that Commission. *Baltimore & Ohio Raliroad Company* v. *United States, Ex. Rel. Pitcairn Coal Co.,* 215 U. S., 481; *Northern Pacific Railroad* v. *Washington,* 222 U. S., 370; *Southern Railway Co.* v. *Reid,* 222 U. S., 424; *W. U. Telegraph Co.* v. *Brown,* 234 U. S., 542, and cases cited; *Boston & Maine Railroad* v. *Hooker,* 233 U. S., 97, and cases cited; *Pennsylvania Railroad Company, Plff. in Error,* v. *Puritan Coal Mining Company,* United States Supreme Court, October T, 1914, 237 U. S., 121.

It does not follow that this court has no jurisdiction of a case involving the recovery of the charge for transmission only, as in this case. In *Pennsylvania R. Co:* v. *Puritan Co.,* supra, the court

say: "But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to the plaintiff's damage. Such suits though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or Federal court." See *Illinois Central Railroad Company* v. *Mulberry Hill Coal Co.*, 238 U. S., 275. But in *Pennsylvania R. R. Co.* v. *Clark Brothers Coal Mining Co.*, 238 U. S., 456, involving the right of a shipper to recover damages from a carrier for alleged inadequate and discriminating car service, the court held, that, "when the complaint involves an attack upon the rule or method of car distribution practiced by the carrier in distributing cars for interstate shipments, no action is maintainable in any court for damages alleged to have been inflicted thereby until the Commission has made its finding as to the reasonableness of such rules or methods."

Continuing, that case holds, that "where . . . it appears that the Act to Regulate Commerce has been violated, and the requisite ruling as to the unreasonableness of the practice assailed has been made by the Commission, § 9 applies and is exclusive, and the shipper must elect between a proceeding for reparation award before the Commission, or a suit in the Federal court. He cannot resort to the state court. That section provides:

"Section 9. That any person or persons claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this Act, in any District or Circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt." In defining the scope of Section 9, the court, in *Pennsylvania R. R. Co.* v. *Clark Brothers Coal Mining Co.*, supra, says: "This provision defines the remedies to which a person in the situation of the plaintiff is entitled, and the

terms of the provision clearly indicate that these remedies are exclusive. The express requirement of an election between the proceeding before the Commission and a suit in the Federal court leaves no room for the conclusion that there is an option in such case to resort to the state court. Where the proceeding has been had before the Commission and reparation awarded, suit under section sixteen (as amended in 1910) may be brought in either a state or Federal court, but this is after the Commission's award has been made."

It is the opinion of the court that the defendant was not liable for any greater sum than the amount named for sending the message.

The entry will be,

*Exceptions sustained.*