# WESTERN UNION TELEGRAPH CO. v. BANK OF SPENCER.

No. 5900.     Opinion Filed April 11, 1916.

(156 Pac. 1175.)

1.  **COMMERCE—Power to Regulate—Exclusive or Concurrent Powers.** Act of Cong. June 18, 1910, c. 309, 36 Stat. 539, amending the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379), which placed telegraph companies, with respect to interstate business, in the same class as other common carriers and made such companies liable under the federal law for any dereliction of duty, supersedes all state laws on the subject.

2.  **COMMERCE—Telegraphs and Telephones—Operation—Limitation of Liability—Validity.** A stipulation, on the back of a regular printed form upon which messages are written, that a telegraph company will not be liable for mistakes or delays in the transmission or delivery of an unrepeated message beyond the amount received for sending the same, and a further stipulation that the company will not be liable for damages or statutory

penalties in any case where the claim is not presented in writing within 90 days after the message is filed with the company, are, as applied to interstate messages, valid and binding upon the sendee of such message, and are not affected by section 9, art. 23, Const.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Action by the Bank of Spencer, Oklahoma, against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed.

*Keaton, Wells & Johnston* and *George H. Fearons,* for plaintiff in error.

*Everest & Campbell,* for defendant in error.

HARDY, J. The Bank of Spencer, which will be referred to as "plaintiff," sued the Western Union Telegraph Company, hereinafter referred to as "defendant," in the district court of Oklahoma county, for damages for negligently and carelessly failing to transmit and deliver to plaintiff a telegram as follows:

"Texline, Texas, July 24, To Bank of Spencer, Spencer, Okla. Hardin Check fifteen hundred five dollars unpaid, we are remitting you eight hundred twenty-six and 2-100 dollars for his account.

"BANK OF TEXLINE."

The plaintiff alleged that said telegram as transmitted and delivered was made to read "paid," when it should have read "unpaid," and that plaintiff did not discover said mistake until the 3d day of August, 1912; that, relying upon the information contained in said telegram, plaintiff permitted said Hardin to check out all money and funds which had been deposited to his credit upon a certain check drawn upon the Bank of Texline by

said Hardin and that there did not come back into the hands of plaintiff sufficient funds to reimburse it for the said sum of $1,505 which had been paid to said Hardin; that, after discovering said mistake, plaintiff undertook to collect said amount from said Hardin, but was unable to do so; that plaintiff presented its claim for damages to defendant in February, 1913. The defendant answered by way of general denial, and further pleaded that the message as received by it for transmission was written upon a regularly printed form, which constituted a written contract between the sender and defendant and between plaintiff and defendant, and that neither plaintiff nor the sender nor any one in its behalf had, in accordance with said contract within ninety days from the sending of said message, presented to the defendant a claim for damages; and, further, that by the terms and conditions of said contract defendant should not be liable for mistakes or delays in the transmission or delivery of an unrepeated message beyond the amount received for sending the same, and that said message was unrepeated, and defendant was not directed or requested to repeat the same, and that the sum received by it for transmission thereof was fifty cents; further, that said message was an interstate message to be sent from a point in the State of Texas to a point in the State of Oklahoma, and that by reason of the provisions of the act of Congress June 18, 1910, jurisdiction to regulate interstate communication by telegraph was conferred upon the Interstate Commerce Commission, and that the stipulations in the contract mentioned were reasonable and valid and binding and free from any regulation or control on the part of the State of Oklahoma or any other state. A copy of the printed form upon which the message was written, containing the conditions referred to, was attached to and made a part of the answer. The

message was unrepeated. Trial resulted in a verdict for plaintiff, and defendant prosecutes error.

The Act of Congress of June 18, 1910, c. 309, 36 Stat. L. 539, amending the act to regulate commerce, provides that said act shall be applicable to all interstate telegraph business, and that, as to all interstate business, telegraph, telephone, and cable companies are common carriers within the meaning and purpose of the act, and that, as to their interstate business, telegraph companies must print and publish their rates, rules, classifications, regulations, and practices and file same with the Interstate Commerce Commission, and that such rates, rules, regulations, classifications, and practices established by them shall be reasonable, and authorizes them to classify messages into day, night, repeated and unrepeated, and such other classes as are just and reasonable, with authority to prescribe different rates therefor, and imposes penalties for any attempt to evade such published rates, rules, practices and regulations, and confers upon the Interstate Commerce Commission jurisdiction to determine what rates, regulations, or practices are just and reasonable, and declares that such rules and regulations established by telegraph companies or other common carriers are deemed just and reasonable until changed by the Interstate Commerce Commission.

It is apparent that Congress has undertaken to occupy the field of interstate commerce by telegraph and to assume exclusive jurisdiction and authority in the regulation thereof, and has specifically prescribed the rules which govern business of this character.

In *White & Co. v. Western Union Telegraph Co.,* 33 Interst. Com. Com'n R. 500, the Interstate Com-

merce Commission assumed jurisdiction of a case in which the question of the reasonableness of the rates prescribed by the company between New York and San Francisco and by cable from New York to points in England was involved, and, in delivering the opinion of the commission, Mr. Commissioner Hall said:

"Jurisdiction over these cable rates is clearly conferred upon us by the act to regulate commerce and is admitted of record by counsel for defendant."

The jurisdiction of the commission in regard to the service between New York and San Francisco was so apparent and unquestioned that it was not discussed in the opinion. In reference to the right of the carriers in the first instance to initiate their own charges, it was said that the right was too well established to need citation of authorities, and that:

"It is apparent that both classification and charges are to be made in the first instance by the carrier, and it follows by necessary implication that the carrier is to define the classes and formulate such rules and regulations pertaining thereto as shall be just and reasonable, and the initiative is with the carrier."

The commission has by various other rulings assumed specific control of interstate telegraph business.

In case of *Western Union Telegraph Co. v. Brown*, 234 U. S. 542, 34 Sup. Ct. 955, 58 L. Ed. 1457, the Supreme Court of the United States considered a similar question. That was an action for mental anguish due to the negligent failure of defendant to deliver to plaintiff a telegram announcing the death of plaintiff's sister. The message originated in South Carolina and was addressed to Washington, D. C., at which place the negligence complained of occurred. Trial resulted in a ver-

dict for plaintiff as authorized by the statute of that, state making mental suffering a cause of action.    Mr. Justice Holmes delivered the opinion of the court, which reversed the case upon two grounds:    First, because the South Carolina mental anguish statute, as applied, attempted to define the liability of the telegraph company for negligence occurring outside of that state; and, second, because it was an attempt to regulate interstate commerce, and in this latter connection the court said:

"But the act also is objectionable in its aspect of an attempt to regulate commerce among the states.    That is, as construed, it attempts to determine the conduct required of the telegraph company in transmitting a message from one state to another or to this district by determining the consequences of not pursuing such conduct, and in that way encounters *Western U. Telegraph Co. v. Pendleton,* 122 U. S. 347 (7 Sup. Ct. 1126), 30 L. Ed. 1187, 1 Interst. Com. R. 306, a decision in no way qualified by *Western U. Telegraph Co. v. Commercial Mill Co.,* 218 U. S. 406 (31 Sup. Ct. 59), 54 L. Ed. 1088 (36 L. R. A. [N. S.] 220, 21 Ann. Cas. 815)."

This court, in previous decisions, has recognized the fact that on account of the passage of the Act of Congress of June 29, 1906, c. 3591, 34 Stat. at Large, 584, regulating commerce between the states, the state under its police power has ceased to have authority to pass acts relative to contracts made by carriers pertaining to interstate shipments, and that section 9 of article 23 (section 358, Ann. Ed) of the Constitution of this state applies only to intrastate shipments.  *St. Louis & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089; *Missouri, K. & T. Ry. Co. v. Walston,* 37 Okla. 517, 133 Pac. 42; *St. L. & S. F. R. Co. v. Zickafoose,* 39 Okla. 302, 135 Pac. 406; *C., R. I. & P. Ry. Co. v. Harrington et al.,* 44 Okla.

41, 143 Pac. 325; *St. L. & S. F. R. Co. v. Mounts,* 44 Okla. 359, 144 Pac. 1036; *C., R. I. & P. Ry. Co. v. Bruce,* 50 Okla. 667, 150 Pac. 880. This being true, when Congress, by the Act of June 1, 1910, occupied the field of regulation of interstate commerce by telegraph, the same rule would apply, and the state Constitution and statutes could no longer be invoked in such cases.

The Supreme Court of Appeals of Virginia, in *Western Union Telegraph Co. v. Bilisoly,* 116 Va. 562, 82 S. E. 91, which was a suit for a statutory penalty because of delay in the delivery of a night letter, said:

"By an act of Congress approved June 18, 1910, telegraph companies, so far as interstate business is concerned, have been placed under the direct supervision of the Interstate Commerce Commission and are subject, so far as applicable, to the same rules, regulations, restrictions, and penalties that are imposed upon common carriers. This act has occupied the entire field and takes complete control of the regulation of telegraph companies, and, while it has impliedly exempted them from any penalty for negligence, it has provided a severe maximum penalty for intentional discrimination. Before the passage of this act, there had been no legislation by Congress affecting or conflicting with the state statutes imposing a penalty for failure to deliver messages promptly, and therefore the state statutes affecting telegraph companies were upheld even as to interstate messages, upon the ground that, until Congress has legislated upon the subject-matter of telegraph companies, the state statutes were applicable. *James Case,* 162 U. S. 650 (16 Sup. Ct. 934, 40 L. Ed. 1105); *Commercial Milling Co. Case,* 218 U. S. 406 (31 Sup. Ct. 50, 54 L. Ed. 1088, 36 L. R. A. [N. S.] 220, 21 Ann. Cas. 815); *Crovo Case,* 220 U. S. 364 (31 Sup. Ct. 399, 55 L. Ed. 498), and others. * * *

"It would be inconvenient as well as unnecessary to recite the detailed provisions of the act of Congress approved June 18, 1910. It is sufficient to say that by it Congress has occupied the field of regulation with respect to interstate telegrams, and hence the state statute imposing a penalty for failure to make prompt delivery can no longer be invoked in such cases. The act of Congress has ousted the state of jurisdiction over the subject."

The decision in that case was followed in *Western Union Telegraph Co. v. First National Bank of Berryville,* 116 Va. 1009, 83 S. E. 424.

The Supreme Court of Arkansas, in *Western Union Telegraph Co. v. Compton,* 114 Ark. 193, 169 S. W. 946, affirmed a judgment in favor of the plaintiff for mental anguish caused by the negligence of the defendant in transmitting and delivering a telegram informing the plaintiff of the critical illness of his child, the message being sent from Nashville, Ark., to Hugo, Okla. Upon rehearing the court, following the decision of the Supreme Court of the United States in the *Brown Case, supra,* receded from its former opinion, on the ground that the question involved was one which rested with the Supreme Court of the United States as the final arbiter, and announced the policy of that court to yield obedience to the decision of the Supreme Court of the United States, and held valid a stipulation limiting the liability of the defendant to the sum of $50, and modified its former judgment, reducing the plaintiff's recovery to that sum. This opinion has been followed by that court ever since.

In *Gardner v. Western Union Telegraph Co.,* 231 Fed. 405, which was a case originating in the United States Court for the Western District of this state, the

Circuit Court of Appeals for the Eighth Circuit sustained as valid the very form of contract here involved. The plaintiff in that case resided at Quinlan, Okla., and sued for delay in delivering a message to him sent from Syracuse, Kan. The message was an unrepeated one, and no claim for damages was presented within the time required by the printed conditions on the back thereof. It was contended that that case was governed by section 9, art. 23, of the Constitution of this state, which provides that:

"Any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand or liability, shall be null and void."

In holding that said constitutional provision did not apply for the reason that the telegram involved was interstate commerce, it was said:

"Congress has taken possession of the field of interstate commerce by telegraph, and it results that the power of the states to legislate with reference thereto has been suspended. The great necessity that commerce between the state should be free from such interference applies in a marked degree to interstate commerce by telegraph. If the regulation which is pleaded in bar in this suit should be held valid in Kansas and void in Oklahoma, and the illustration may be extended to all the states of the Union, then the power of the United States to regulate commerce between the states in relation to telegraphic business would not only be directly interfered with, but destroyed. * * * We are therefore of the opinion that, Congress having taken possession of the field of interstate commerce by telegraph, the provision of the Constitution of Oklahoma relied upon has become inoperative for the purpose of striking down

the regulation in question. Whether the regulation is a reasonable one, or not, is in our judgment a question for the Interstate Commerce Commission to determine."

Other decisions rendered since the passage of the act of June 18, 1910, holding that the states are without authority to in any manner regulate telegraph business of an interstate character, are as follows: *Haskell Imp. & Seed Co. v. Postal Tel.-Cable Co.* (Me.), 96 Atl. 219; *Williams v. Western Union* (D. C.), 203 Fed. 140; *Strauss Iron Co. v. Western Union Telegraph Co.,* Pa. Super. Ct. p. ——.

In *Primrose v. Western Telegraph Co.,* 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883, it was held that the terms on the back of the telegraph message, so far as they are not inconsistent with law, form a part of the contract between the sender and the company, and that a regulation requiring the sender of a message to have it repeated and to pay half as much again as the regular price in order to hold the company liable for mistakes or delays in transmitting or for not delivering a message is a reasonable regulation. *Western Union Tel. Co. v. Dent,* 42 Wash. L. Rep. 722; *Gardner v. Western Union Tel. Co., supra; Whitehill v. Western Union Tel. Co.* (C. C.) 136 Fed. 499; *Missouri, K. & T. Ry. Co. v. Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

The fact that plaintiff was the sendee of the message, and not the sender, can make no difference. The weight of authority is that the sendee is bound by the regulations prescribed by defendant in relation to the time in which a claim for damages shall be presented and which limit liability for negligence in transmitting an unrepeated message. The foundation of plaintiff's action is the alleged negligence of the defendant in transmitting and delivering

the telegram as originally delivered to it. Before plaintiff would be entitled to maintain an action there must necessarily be some duty owing by defendant to him from a breach of which would flow such right. The contract between the sender of said message and the defendant was for the benefit of plaintiff, and, without the delivery of said message to defendant by the sender and without defendant having undertaken to transmit and deliver same to plaintiff, there would have been no duty owing to plaintiff by defendant, and hence no negligence in the absence of such a contract for which plaintiff could maintain an action. It is said by many of the courts that plaintiff would have no cause of action except for the contract, because the duty of the company to the plaintiff arises out of the contract entered into by the sender of the message and the company for plaintiff's benefit. Can the plaintiff, then, avail himself of this breach of duty owing to him by the company arising out of said contract, and at the same time not be bound by the other conditions thereof? The great weight of authority is to the effect that he cannot. *Gardner v. Western Union Tel. Co., supra; Halsted v. Postal Tel. Cable Co.,* 120 App. Div. 433, 104 N. Y. Supp. 1016; *McGehee v. Western Union Tel. Co.,* 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512; *Ellis v. Am. Tel. Co.,* 13 Allen (Mass.) 226; *Findlay v. Western Union Tel. Co.* (C. C.) 64 Fed. 459; *Broom v. Western Union Tel. Co.,* 71 S. C. 506, 51 S. E. 259, 4 Ann. Cas. 611; *Coit et al. v. Western Union Tel. Co.,* 130 Cal. 657, 63 Pac. 83, 53 L. R. A. 678, 80 Am. St. Rep. 153; *Manier v. Western Union Tel. Co.,* 94 Tenn. 442, 29 S. W. 732; *Frazier v. Western Union Tel. Co.,* 45 Ore. 414, 78 Pac. 330, 67 L. R. A. 319, 2 Ann. Cas. 396; *Western Union v. Van Cleave,* 107 Ky. 464, 54 S. W. 827, 92 Am.

St. Rep. 366; *Stone & Co. v. Postal Tel. Co.*, 31 R. I. 174, 76 Atl. 762; *Western Union Tel. Co. v. Cueberson*, 79 Tex. 65, 15 S. W. 219; *Western Union Tel. Co. v. Bilisoly, supra; Russell v. Western Union Tel. Co.*, 57 Kan. 230, 45 Pac. 598.

It is said, however, that the action is one sounding in tort and is not based upon contract, and therefore the act of Congress in question cannot apply, and the decisions cited are not controlling. This, however, does not make any difference. The stipulation in the contract expressly provides that the liability of the defendant for an unrepeated message shall not exceed the price received for the transmission thereof, which in this case was 50 cents, and in addition provides that such message may be repeated upon the payment of an additional rate, the same to be the regular rate plus one-half that amount, and defendant under the act of June 18, 1910, is given authority to prescribe these rules and regulations, which are declared by said act to be deemed reasonable until otherwise determined by the Interstate Commerce Commission, and they are binding upon the sendee though the action sound in tort. *Halsted et al. v. Postal Tel.-Cable Co., supra; Stone & Co. v. Postal Tel.-Cable Co., supra; Russell v. Telegraph Co., supra; Western Union Tel. Co. v. Van Cleave* and *Frazier v. Western Union Tel. Co., supra; Coit v. Telegraph Co., supra; Telegraph Co. v. Brown, supra.*

The reasonableness of the regulations prescribed by the defendant is a question the jurisdiction of which to determine is conferred by the act of June 18, 1910, upon the Interstate Commerce Commission, and this court has no jurisdiction in this action to declare said rules and

regulations unreasonable; but this question must first be raised before the Interstate Commerce Commission. *A., T. & S. F. Ry. Co. v. Foster,* 31 Okla. 661, 122 Pac. 139; *Mitchell Coal & Coke Co. v. Pa. R. Co.,* 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472; *Haskell Impl. & Seed Co. v. Postal Tel.-Cable Co.* (Me.) 96 Atl. 219; *Telegraph Co. v. Simpson* (Ark.) 174 S. W. 232; *Williams v. Western Union Tel. Co., supra; Gardner v. Western Union Tel. Co., supra.*

The relative supremacy of the state and national governments in the matter of regulating interstate commerce is not now an open question. Where there is a conflict of jurisdiction, the state must give way; that is, where Congress acts in such a way as to manifest a purpose upon its part to exercise its constitutional authority by regulating interstate commerce of any character, the power of the state in the premises ceases to exist. *Southern R. Co. v. Reid,* 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257; *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; *St. Louis, I. M. & S. Ry. v. Edwards,* 227 U. S. 265, 33 Sup. Ct. 262, 57 L. Ed. 506; *Boston & Maine R. R. v. Hooker,* 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; *Erie R. Co. v. Williams,* 233 U. S. 671, 34 Sup. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; *A., T. & S. F. R. Co. v. Robinson,* 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901.

The plaintiff cites in support of the judgment of the trial court the decisions of this court in the following cases: *Western Union Tel. Co. v. Sights et al.,* 34 Okla. 461, 126 Pac. 234, 42 L. R. A. (N. S.) 419, Ann. Cas. 1914C, 204; *Levy. Bros. v. Western Union Tel. Co.,* 39 Okla. 416, 135 Pac. 423. These cases, it will be seen upon

an examination thereof, were decided prior to the passage of the act here involved, and can have no controlling effect in this action. Congress having taken jurisdiction to regulate telegraphic business of an interstate nature, its authority in the premises is supreme, and the rules and regulations prescribed by the defendant in accordance with the authority conferred by the act, so long as they have not been declared unreasonable, are binding upon the parties hereto.

It results that the judgment of the trial court must be reversed.

All the Justices concur.