A. J. POOR, Doing Business as A. J. POOR GRAIN CO., Respondent, v. WESTERN UNION TELEGRAPH CO., Appellant.

Kansas City Court of Appeals, June 11, 1917.

1. **DAMAGES: Telegram: Mistake in Transmission: Action by Sendee: Basis of Suit.** A suit for damages by the sendee of a telegram for mistake in transmission is not on the contract between the sendee and the defendant, although the latter's duty to the sendee arose because that contract was created and performance thereof was undertaken by defendant, but is based upon the violation of defendant's duty to correctly transmit and deliver the message. This public duty the defendant owed the sendee even though the latter was not an immediate party to the contract, and hence the sendee has a right of action based upon the violation of that public duty.

2. ———: ———: **Interstate Commerce: Governed by Federal Law.** A telegram, being from a point in one State to a point in another, is an interstate message and its transmission an act of interstate commerce. The interstate commerce statutes bring interstate telegraph companies within the terms and subject to all the provisions of the Interstate Commerce Law so far as applicable. And the rule of decision heretofore in force in this State respecting the force and effect of provisions in the contract by which a message is transmitted are no longer controlling with respect to interstate messages.

3. ———: ———: ———: **Rates.** The assertion of the power of Congress over the subject of interstate telegrams and the duties of companies engaged in transmitting them expressly provide for uniformity of rate, of classification, and of service, and necessarily of responsibility therefor.

4. ———: **Negligence in Transmission: Evidence.** In an action by the sendee of an interstate telegram against the company for mistake in transmission the evidence is examined and *held* to make out a prima-facie case of at least "ordinary negligence" as the term is used by the Federal courts for which a stipulation on the back of the telegram limiting liability provided.

5. ———: ———: ———: **Stipulation: Measure of Damages; Reasonableness.** The sendee of an unrepeated interstate telegram, sent subject to a stipulation on the back of the message that the company shall not be liable for a mistake in transmission of any unrepeated message beyond the amount charged for sending the same, can recover only the amount paid for sending the message. The question of the reasonableness or of the real purpose and effect of such a stipulation is not open to the consideration of the State court, being a matter for the Interstate Commerce Commission to pass on.

Appeal from Jackson Circuit Court—*Hon. Harris Robinson,* Judge.

AFFIRMED (*Conditionally*).

*Albert T. Benedict, S. J. McCullough* and *New, Miller, Carmack & Winger* for appellant.

*Harold M. Noble* and *McCune, Caldwell & Downing* for respondent.

TRIMBLE, J.—This is a suit to recover damages sustained by reason of a mistake negligently made by defendant in the transmission of a telegram to plaintiff Poor was a grain broker and commission merchant doing business in Kansas City, Missouri, under the name of A. J. Poor Grain Company. On August 4, 1913, a customer of plaintiff by the name of Townsdin, residing in Randall, Kansas, delivered to defendant's agent at that place a message to be sent to plaintiff which read as follows:

"Buy fifteen thousand Dec. wheat around eighty-nine."

The message which was delivered to plaintiff read:

"Buy fifty thousand Dec. wheat around eighty-nine."

As written and directed to be sent by Townsdin, the message was an order to buy fifteen thousand bushels of wheat, but as delivered to Poor it was an order to buy *fifty* thousand bushels.

The change arose through the negligence of the defendant. As directed in the telegram he received, Poor bought fifty thousand bushels and by telegram notified Townsdin of that fact. The latter immediately telephoned Poor that he had ordered and wanted only fifteen thousand bushels. Poor went to the defendant's office and told the agent of the mistake and asked him what disposition he should make of the extra 35000 bushels. The agent agreed to take the matter up with the company's general agent, but being unable to get any directions from him, informed plaintiff of that fact and told Poor to close out the wheat as best he could and put in his claim for the loss. Poor sold the extra wheat and

sustained a loss of $712.50. This suit was then brought to recover that amount as the damages arising from defendant's wrongful failure to correctly transmit and deliver said message. Plaintiff obtained a verdict and judgment for the full amount sued for, and defendant has appealed.

The telegram was written by Townsdin on one of defendant's ordinary telegram blanks, which, on its face, directed the telegraph company to "Send the following message subject to the terms on the back hereof, which are hereby agreed to." On the back of the message was printed the following:

"All messages taken by this company are subject to the following terms, which are hereby agreed to. To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged, in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this company as follows: 1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially valued; . . . 2. In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the non-delivery of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this message is hereby valued, unless a greater value is stated in writing hereon at the time the message is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value to one-tenth of one per cent., thereof."

The message was an unrepeated message and the charge was the usual and regular price for sending a

telegram of that length and distance, to-wit, forty cents, which was paid by the sender Townsdin.

The suit is not on the contract between the sender and the defendant, although the latter's duty to the sendee arises because that contract was created and performance thereof was undertaken by defendant. The suit is based upon the violation of defendant's public duty to correctly transmit and deliver the message. This public duty, arising upon the creation of the contract of transmission, the defendant owed the sendee even though the latter was not an immediate party to the contract. Hence plaintiff, as sendee, has a right of action based upon the violation of that public duty. [Western Union Tel. Co. v. Burris, 179 Fed. 92; State Bank of Commerce v. Western Union Tel. Co., 142 Pac. 156; Bailey v. Western Union Tel. Co., 76 Atl. 736; Western Union Tel. Co. v. Holder, 174 S. W. 552; Eureka Cotton Mills Co. v. Western Union Tel. Co., 70 S. E. 1040; Western Union Tel. Co. v. Jackson Lumber Co., 65 So. 962; Western Union Tel. Co. v. Commercial Milling Co., 218 U. S. 406, 420.]

The telegram being from a point in Kansas to a point in Missouri was an interstate message, and its transmission was an act of interstate commerce. [Western Union Tel. Co. v. Texas, 105 U. S. 460; Western Union Tel. Co. v. Pendleton, 122 U. S. 347.] Section 7 of the Act of Congress of June 18, 1910 (36 Stats. L. 544; Fed. Stats. Ann. 1912, Vol. 1., p. 111), amending section 1 of the original Interstate Commerce Act (24 Stats. L. 379; 3 Fed. Stats. Ann. 809), as amended by the Act of June 29, 1906 (34 Stats. L. 584; Fed. Stats. Ann. 1909, Supp., p. 255), known as the "Hepburn Act" with the "Carmack Amendment" thereto, declares that telegraph companies engaged in sending messages from one State to another State "shall be considered and held to be common carriers within the meaning and purpose of this Act," i. e. within the meaning and purpose of the entire Interstate Commerce Law as it then existed. Being, therefore, a common carrier within the meaning of the Interstate Commerce Statutes, and engaged in inter-

state commerce with respect to the particular message in controversy, the defendant telegraph company is subject to and governed by the Federal law as expounded and applied by the Federal Courts to the exclusion of all State laws and decisions. Undoubtedly, it is well established that the *liability* of common carriers *of property,* for any violation of their public duty in interstate shipments or carriage, is governed wholly by the Federal statutes relating thereto and by the rules of decision observed by the Federal courts in construing such statutes and in applying the general principles of law to the questions of liability. This has been decided so frequently of late years that it is hardly necessary to cite even a few of the many cases announcing that doctrine. [Adams Express Company v. Croninger, 226 U. S. 491; Missouri etc. R. Co. v. Harriman, 227 U. S. 657; Boston and Maine R. Co. v Hooker, 233 U. S. 97; Hamilton v. Chicago, etc., R. Co., 177 Mo. App. 145; Kent v. Chicago, etc., R. Co., 189 Mo. App. 424.] But plaintiff contends that Congress has not legislated upon the subject of the liability of telegraph companies nor upon the measure of damages governing in a suit in tort, and that, therefore, such matters are not controlled by Federal legislation and rules of decision. It is true, the Carmack Amendment to the Hepburn Act dealt with the liability of common carriers transporting property. And it is also true that section 6 of the Commerce Act, *requiring* common carriers subject to the provisions of said act to file with the Interstate Commerce Commission schedules of its rates, fares and charges for the transportation of passengers and property, is held not to apply to telegraph companies. [25 An. Rep. 1. C. C. 1911, p. 5; Conf. Rul. No. 305.] But sections 1, 3, 15 and 20 of the Interstate Commerce Law do apply to such companies. Section 1, as stated before, makes the Act applicable to telegraph companies engaged in transmitting messages from one State to another; and requires that all charges for services rendered shall be just and reasonable, and all unjust and unreasonable charges are declared to be unlawful; and it further provides that messages "may

196 Mo. App.—36

be classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages." Section 3 provides for uniformity of charges for the different classes of service by making it unlawful to give preferences or advantages in any respect whatsoever. Section 20 provides that upon complaint being made to the Interstate Commerce Commission that any rate or classification, regulation or practice whatsoever of common carriers subject to the Act, including telegraph companies, the Commission shall have power to declare what rate, or practice, or regulation is reasonable and to forbid those found to be unjust, and to require the companies to adopt the one prescribed. Section 20 also covers the matter of making reports and keeping accounts. The Commerce Commission in its 24th An. Rep., p. 32 says: "The administration of the twentieth section of the Act to regulate commerce, so far as telegraph companies are concerned, gives rise to no very serious difficulty."

It is, therefore, apparent that the Interstate Commerce statutes clearly bring interstate telegraph companies within the terms and subject to all the provisions of the Interstate Commerce Law so far as applicable thereto; and that such companies are allowed the privilege of making its rates, classifications and charges subject to the power of the Interstate Commerce Commission to revise them upon complaint, and subject to the law's requirement that they shall be *reasonable and uniform* for the same service and classification. ([White & Co. v. Western Union Tel. Co., 1. C. C. Rep. 500.] Which was duly offered in evidence and is shown in the abstract.) So that the above named Federal laws constitute an assertion of the power of Congress over the subject of interstate telegrams and the duties of companies engaged in transmitting them. And this assertion of power over them expressly provides for uniformity of rate, of classification, and of service; and necessarily of responsibility therefor. In so doing, state action and rules are excluded. These principles are clearly an-

nounced in and deducible from the cases of Atchison etc.
R. Co. v. Dettleboch, 239 U. S. 588; Southern Ry. Co. v.
v. Prescott, 240 U. S. 632.    [See, also, Seaboard Air
Line Ry. Co. v. Horton, 233 U. S. 492; Cleveland, etc.,
R. Co v Dettleboch, 239 U. S. 588; Southern Ry. Co. v
Reid, 222 U. S. 411.   From all of which it follows that
the rule of decision heretofore in force in this State
respecting the force and effect of provisions in the con-
tract by which a message is transmitted are no longer
controlling with respect to interstate messages.    They
are to be given the effect accorded them by the Federal
laws and decisions. [Gardner v. Western Union Tel. Co.,
231 U. S. 405; Western Union Tel. Co. v. Brown,
234 U. S. 542; Haskell Implement etc. Co. v. Postal
Tel. etc. Co., 114 Maine 277, 96 Atl. 219; Western
Union Tel. Co. v. Bank of Spencer, 156 Pac. 1175; West-
ern Union v. Bilisoby, 116 Va. 562; Western Union Tel.
Co. v. First National Bank of Berryville, 116 Va. 1009;
Durre v. Western Union Tel. Co., 161 N. W. 755; Mea-
dows v. Postal etc. Co., 91 S. E. 1009; Kirsch v. Postal
Tel. Cable Co., 164 Pac. 267.]

The message, an order to buy, was changed in an
important particular, and since everything surrounding
the change is wholly within the knowledge of the com-
pany and it has not seen fit to throw any light upon the
matter, the proof is sufficient to make out a prima-facie
case of at least the "ordinary negligence" spoken of by
the Federal courts, for which the stipulation on the back
of the telegram limiting liability provides.   [Williams v.
Western Union Telegraph Co., 203 Fed. 140, 144; Jones
v. Western Union Telegraph Co., 18 Fed. 717.]

Since the case is governed wholly by the Federal
rules of decision, and since they uphold the validity of
the stipulations set out on the back of the telegraph blank
limiting liability for incorrect transmission, plaintiff's
recovery must be limited by the provision applicable
thereto.   That provision is that the company shall not
be liable for a mistake in the transmission of any unre-
peated message beyond the amount received for sending
the same.   There is here no distinction as to whom such

limitation shall apply, whether to sender or sendee. And while the latter is not directly a party to the contract for transmission, yet his rights are drawn from and are limited by that contract. [Gardner v. Western Union Tel. Co., 231 Fed. 405; Findley v. Western Union Tel. Co., 64 Fed. 459; Whitehill v. Western Union Tel. Co., 136 Fed. 499; Western Union Tel. Co. v. Bank of Spencer, 156 Pac. 1178; McGehee v. Western Union Tel. Co., 53 So. 205.] Nor is the question of the reasonableness or. of the real purpose and effect of such a limitation open to our consideration since that is a matter for the Interstate Commerce Commission to pass upon. [Gardner v. Western Union Tel. Co., 231 Fed. 405, 409; Williams v. Western Union Tel. Co., 203 Fed. 150; Texas etc. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Baltimore, etc., R. Co. v. U. S. ex rel. Pitcairn Coal Co., 215 U.. S. 481; Boston and Maine R. Co. v. Hooker, 233 U. S. 97, 121; Durre v. Western Union Tel. Co., 161 N. W. 755.]

However much one may be convinced that a stipulation limiting liability to the cost of the message is not a limitation of but an absolute exemption from liability for negligence, nevertheless the case must be determined according to the rules of decision laid down by the Federal courts and they have held that such provision is not an exemption from liability. [Primrose v. Western Union Tel. Co., 154 U. S. 1, 16.] And the facts of the case with regard to the negligence shown make the provision limiting the damages to the cost of the message applicable under the Federal rule. [Haskell etc., Sec'd. Co. v. Western Union Tel. Co., 114 Maine 277; Western Union Tel. Co. v. Simpson, 117 Ark. 156; Western Union Tel. Co. v. Orr, 158 Pac. 1139; Boyce v. Western Union Tel. Co., 89 S. E. 156; Meadows v. Postal Tel. & C. Co., 91 S. E. 1009.] The contention that plaintiff should be denied even that sum for the reason that he has not asked for that specific amount, is untenable. He has asked for the enforcement of the liability to him, and has obtained more than he is entitled to. But this does not require a forfeiture of that to which he is entitled.

The questions involved herein, or at least a number of them, are discussed and considered in an opinion by ELLISON, P. J., in the case of Jacobs v. Western Union Telegraph Company promulgated on the same date this one is. The facts, however, are different as to the character of the negligence shown and as to the protection available had the message been repeated.

If, therefore, plaintiff will, within ten days from the announcement of this opinion, enter a remittitur of such amount as will leave remaining a judgment for forty cents as of the date of its rendition, then this case is affirmed, otherwise it is reversed and remanded. All concur.