## IN THE MATTER OF THE INVESTIGATION OF THE INTER-ISLAND STEAM NAVIGATION COMPANY, LIMITED.

### No. 1050.

#### APPEAL FROM PUBLIC UTILITIES COMMISSION.

ARGUED NOVEMBER 22, 1917.        DECIDED DECEMBER 18, 1917.

ROBERTSON, C.J., QUARLES, J., AND CIRCUIT JUDGE KEMP IN PLACE OF COKE, J., DISQUALIFIED.

COMMERCE—*statutes—common carriers.*

By the provisions of the Act of Congress of September 7, 1916, known as the Shipping Act, one engaged in transporting persons and property on the high seas on regular routes from port to

port in the Territory of Hawaii is a common carrier by water in interstate commerce.

SAME—*same—same—jurisdiction.*

The shipping board established by the Act of Congress of Sep-· tember 7, 1916, has sole and exclusive jurisdiction to regulate the rates and charges of a common carrier by water in interstate commerce.

SAME—*same—same—same—public utilities.*

The public utilities commission has no jurisdiction to regulate the rates and charges of a common carrier by water in interstate commerce for the transportation of persons and property from port to port in the Territory of Hawaii.

OPINION OF THE COURT BY QUARLES, J.

This is an appeal from an order made September 28, 1917, by the public utilities commission ·for the regulation of the shipping business of the appellant, the Inter-Island Steam Navigation Company, Limited. The order, excluding the title and preamble, is in words and figures as follows, to wit:

"That the Inter-Island Steam Navigation Company, Limited, reduce all charges for the carriage of passengers and freight to not to exceed the rates and classifications which were in effect on the 1st day of August, A. D. 1916;

"That the company so amend its freight tariff that the total charge for less than quantity lots shall not exceed the minimum charge for quantity lots; .

"That said Inter-Island Steam Navigation Company, Limited, put into effect such changes in rates and classifications on or before the Fifteenth (15th) day of October, A. D. 1917."

The hearing before the commission, which culminated in the order appealed from, commenced on August 24, 1916, and ended on September 4, 1917; when hearings before the commission ended and the matters investigated were taken under advisement. The findings of the commission were filed September 28, 1917. The

minutes of the meetings of the commission, including the stenographic record of all testimony heard, cover two thousand one hundred and twenty-eight typewritten pages, and the documentary evidence introduced, the original exhibits of which are before us, are quite bulky. From the said order the Inter-Island Steam Navigation Company, Limited, hereinafter called the appellant, has appealed to this court, and in its appeal and notice of appeal, which covers four typewritten pages, states the grounds of appeal, which we summarize as follows:

(1)    That the public utilities commission has no jurisdiction over the matter of the reasonableness of rates charged by appellant or over the appellant, sole and exclusive jurisdiction over said matters being vested in the shipping board created by Act of Congress dated September 7, 1916.

(2)    That the order appealed from was made without jurisdiction and is violative of the provisions of the Fourth Article and of the Fifth and Fourteenth Amendments of the Federal Constitution in that no notice was given to appellant of a hearing upon the question of fixing or regulating rates or the classification of shipments.

(3)    That the order is without jurisdiction in that the notice of hearing given the appellant was for a general investigation under the provisions of section 2225 R. L., under which the power to make regulations or institute suits might be exercised by the provisions of section 2233 R. L., but under which the powers given by the provisions of section 2234 R. L. cannot be exercised without violating the said provisions of the Constitution.

(4)    That the finding of the commission is not sustained by the facts found in that the evidence and findings show that the rates and charges of appellant are not

unjust or unreasonable but are too low and therefore insufficient.

The assignments of error set forth in the brief cover the points stated in the notice of appeal.

The first question is the serious one, and, if answered in the affirmative on the ground of lack of jurisdiction in the commission to make the order appealed from, will necessarily result in a reversal, in which event the other questions raised become immaterial. This question must be solved by a consideration, interpretation, and, where necessary, construction of those statutory provisions, both local and federal, which have a bearing upon this important question. The solution is not without difficulty.

The territorial legislature, by act which took effect July 1, 1913 (S. L. 1913, c. 89; R. L. 1915, c. 128, secs. 2221-2240 inclusive), hereinafter called the Public Utilities Act, created the public utilities commission, defined its powers and prescribed its duties. The Act gave the commission "general supervision over all public utilities doing business in the Territory of Hawaii." The sections of that Act which are necessary to be considered here are as follows:

Section 5 (Sec. 2225 R. L.) : "The commission and each commissioner shall have power to examine into the condition of each public utility doing business in the Territory, the manner in which it is operated with reference to the safety or accommodation of the public, the safety, working hours and wages of its employees, the fares and rates charged by it, the value of its physical property, the issuance by it of stocks and bonds, and the disposition of the proceeds thereof, the amount and disposition of its income, and all its financial transactions, its business relations with other persons, companies or corporations, its compliance with all applicable territorial and federal laws and with the provisions of its franchise, charter and articles of association, if any, its classifications, rules,

regulations, practices and service, and all matters of every nature affecting the relations and transactions between it and the public or persons or corporations. Any such investigation may be made by the commission on its own motion, and shall be made when requested by the public utility to be investigated, or upon a sworn written complaint to the commission, setting forth any prima facie cause of complaint. All hearings conducted by the commission shall be open to the public. A majority of the Commission shall constitute a quorum."

Section 13 (Sec. 2233 R. L.) : "If the commission shall be of the opinion that any public utility is violating or neglecting to comply with any territorial or federal law, or any provision of its franchise, charter, or articles of association, if any, or that changes, additions, extensions or repairs are desirable in its plant or service in order to meet the reasonable convenience or necessity of the public, or to insure greater safety or security, or that any rates, fares, classifications, charges or rules are unreasonable or unreasonably discriminatory, or that in any way it is doing what it ought not to do, or not doing what it ought to do, it shall in writing inform the public utility of its conclusions and recommendations, shall include the same in its annual report, and may also publish the same in such manner as it may deem wise. The commission shall have power to examine into any of the matters referred to in section 2225, notwithstanding that the same may be within the jurisdiction of the interstate commerce commission, or within the jurisdiction of any court or other body, and when after such examination the commission shall be of the opinion that the circumstances warrant, it shall be its duty to effect the necessary relief or remedy by the institution and prosecution of appropriate proceedings or otherwise before said interstate commerce commission, or said court or other body, in its own name or in the name of the Territory, or in the name or names of any complainant or complainants, as it may deem best."

Section 14. (Sec. 2234 R. L.) : "All rates, fares, charges, classifications, rules and practices made, charged, or observed by any public utility, or by two or more public utilities, jointly, shall be just and reasonable, and

the commission shall have power, after a hearing upon its own motion, or upon complaint, and in so far as it is not prevented by the constitution or laws of the United States, by order to regulate, fix and change all such rates, fares, charges, classifications, rules and practices, so that the same shall be just and reasonable, and to prohibit rebates and unreasonable discriminations between localities, or between users or consumers under substantially similar conditions. From every order made by the commission under the provisions of this section an appeal shall lie to the supreme court of Hawaii in like manner as an appeal lies from an order or decision of a circuit judge at chambers. Such appeal shall not of itself stay the operation of the order appealed from, but the supreme court may stay the same, after a hearing upon a motion therefor, upon such conditions as it may deem proper as to giving a bond and keeping the necessary accounts or otherwise in order to secure a restitution of the excess charges, if any, made during the pendency of the appeal in case the order appealed from should be sustained in whole or in part."

Section 18 (Sec. 2238 R. L.) : "The term 'public utility' as used in this chapter shall mean and include every person, company or corporation, who or which may own, control, operate, or manage as owner, lessee, trustee, receiver, or otherwise, whether under a franchise, charter, license, articles of association, or otherwise, any plant or equipment, or any part thereof, directly or indirectly for public use, for the transportation of passengers or freight, of the conveyance or transmission of telephone or telegraph messages, or the furnishing of facilities for the transmission of intelligence by electricity by land or water or air between points within this Territory, or for the production, conveyance, transmission, delivery or furnishing of light, power, heat, cold, water, gas or oil, or for the storage or warehousing of goods."

Section 20 (Sec. 2240 R. L.) : "This chapter shall not apply to commerce with foreign nations, or commerce with the several states of the United States, except in so far as the same may be permitted under the constitution and

laws of the United States; nor shall it apply to public utilities owned or operated by the Territory, or any county or city and county, or other political division thereof."

At the same session the territorial legislature passed an act entitled "An Act Relating to Certain Gas, Electric Light and Power, Telephone, Railroad and Street Railway Companies and Franchises in the Territory of Hawaii and Amending the Laws Relating Thereto" (S. L. 1913, c. 135). This Act related to several local corporations which had theretofore been granted franchises with the approval of Congress, the names of each and the approving Acts of Congress being as follows: The Hawaiian Electric Company (33 Stat. L. c. 1405, p. 227); Honolulu Gas Company (33 Stat. L. c. 1406, p. 231); Standard Telephone Company (34 Stat. L. c. 3441, p. 309); Wailuku Electric Company (35 Stat. L. c. 80, p. 606); Lahaina Ice Company (35 Stat. L. c. 80, p. 608); Kona Railway Company (36 Stat. L. c. 419, p. 843); and the Hilo Street Railway Company (37 Stat. L. c. 270, p. 243), and made them subject to the provisions of the Public Utilities Act. This Act was approved and amended by Congress (39 Stat. L. c. 53, p. 38), the amendment consisting in interpolating therein the following: "and all franchises heretofore granted to any other public utility or public-utility company, and all public utilities and public-utilities companies organized or operating within the Territory of Hawaii," and by adding two provisos as follows: "*Provided, however*, That nothing herein contained shall in any wise limit the jurisdiction or powers of the Interstate Commerce Commission under the Acts of Congress to regulate commerce; And provided further, That all acts of the public-utility commission herein provided for shall be subject to review by the courts of the said Territory." On September 7, 1916, at the same session, Congress passed what is known as the Shipping Act (39 Stat. L. c. 451, p. 728), by

the first section of which the term "common carrier by water in interstate commerce" is defined as "a common carrier engaged in the transportation by water of passengers or property on the high seas or the Great Lakes on regular routes from port to port between one State, Territory, District or possession of the United States and any other State, Territory, District, or possession of the United States, or between places in the same Territory, District or possession."    Sections 18 and 19 of said Act are as follows:

"That every common carrier by water in interstate commerce shall establish, observe, and enforce just and reasonable rates, fares, charges, classifications, and tariffs, and just and reasonable regulations and practices relating thereto and to the issuance, form, and substance of tickets, receipts, and bills of lading, the manner and method of presenting, marking, packing, and delivering property for transportation, the carrying of personal, sample, and excess baggage, the facilities for transportation, and all other matters relating to or connected with the receiving, handling, transporting, storing, or delivering of property.

"Every such carrier shall file with the board and keep open to public inspection, in the form and manner and within the time prescribed by the board, the maximum rates, fares, and charges for or in connection with transportation between points on its own route; and if a through route has been established, the maximum rates, fares, and charges for or in connection with transportation between points on its own route and points on the route of any other carrier by water.

"No such carrier shall demand, charge, or collect a greater compensation for such transportation than the rates, fares, and charges filed in compliance with this section, except with the approval of the board and after ten days' public notice in the form and manner prescribed by the board, stating the increase proposed to be made; but the board for good cause shown may waive such notice.

"Whenever the board finds that any rate, fare, charge,

classification, tariff, regulation or practice, demanded, charged, collected or observed by such carrier is unjust or unreasonable, it may determine, prescribe, and order enforced a just and reasonable maximum rate, fare, or charge, or a just and reasonable classification, tariff, regulation, or practice." (Sec. 18.)

"That whenever a common carrier by water in interstate commerce reduces its rates on the carriage of any species of freight to or from competitive points below a fair and remunerative basis with the intent of driving out or otherwise injuring a competitive carrier by water, it shall not increase such rates unless after hearing the board finds that such proposed increase rests upon changed conditions other than the elimination of said competition." (Sec. 19.)

There is no question that the appellant, under the provisions of the Shipping Act, is a "common carrier by water in interstate commerce." It is engaged in the transportation by water of passengers and property on the high seas on regular routes from port to port in the Territory of Hawaii. The Shipping Act is a comprehensive one and by its provisions Congress certainly intended to control, through the shipping board by it created, all shipping by water on the high seas in both foreign and interstate commerce and did not intend that any part of such commerce should be controlled by any other commission or board. The reasons for and the objects and purposes of the Shipping Act are obvious, proper, and, we think, necessary owing to the state of war existing between the United States and certain European powers. If Congress, by amending and approving Act 135 aforesaid, placed control of the matter of regulating the rates and charges of appellant in its interstate commerce in the public utilities commission, of which we have grave doubts, by enacting the Shipping Act it withdrew such control from the commission and placed it in the ship-

ping board, which, since the approval of the Shipping Act, has sole jurisdiction to regulate such rates and charges. Congress has the exclusive power of controlling and regulating foreign and interstate commerce and plenary legislative power in the Territories. It has the power to place all shipping on the high seas in the Territory on the same plane as interstate commerce, to declare the same interstate commerce and to withdraw the control thereof from any local board or commission and place the same in a board created by it, and we are satisfied that it has done so in the Shipping Act. The view might be taken that under the rule *noscitur a sociis* the amendments made to Act 135 of 1913 by Congress only relate to utilities companies which have been granted franchises by or with the approval of Congress, the Act, as it passed the legislature of Hawaii and as introduced into Congress, relating only to corporations or companies or individuals that had been granted franchises with the approval of Congress, and the appellant not having been granted any franchise, either by the territorial legislature or by Congress, is not included in the act as amended and passed by Congress, but it is not, in our view of this case, necessary to decide the point. And it is not necessary to consider, discuss or decide whether the Shipping Act repeals by implication any portion of the said act of Congress of March 28, 1916, approving and amending Act 135 of the 1913 session of the local legislature. This act, by its terms, was not to take effect until approved by Congress. If the action of Congress in amending that Act, as it did, has the effect of granting permission to the public utilities commission to regulate the interstate commerce carried on by the appellant on the high seas, that permission has been withdrawn by the Shipping Act. The provisions of the Public Utilities Act, as amended by Congress, may well be held to be suspended or superseded by

the Shipping Act on the principle that the last expression of the will of Congress prevails when it conflicts with former provisions (*Henrietta M. & M. Co.* v. *Gardner,* 173 U. S. 123, 128). It is contended by counsel for the public utilities commission that the commission has not been deprived of jurisdiction to fix the minimum rates for freight or passage of the appellant and that the shipping board has only been given power to fix maximum rates for such freight or passage, and therefore concurrent jurisdiction exists in the shipping board and public utilities commission to a certain extent. This contention cannot be sustained as under the Shipping Act the commission has no power to regulate such rates and charges at all. If, however, this contention should prevail much confusion and more or less conflict would result. Suppose, for instance, the shipping board should establish a maximum freight charge of one dollar and fifty cents per ton for freight of a certain class between the ports on the island of Oahu and ports on the island of Maui, and the public utilities commission should establish a minimum rate of the sum of two dollars per ton, here would be a direct conflict of jurisdiction. Which would control? There is and can be no dual control of interstate commerce by the federal and local governments. As "there is no room in our scheme of government for the assertion of state power in hostility to the authorized exercise of federal power," as held in the *Minnesota Rate Cases,* 230 U. S. 352, 399, the reason is equally cogent for holding that there is no room for the exercise of the power of the Territory in hostility to that of the federal government in the matter of regulating the business of a common carrier by water between different ports of this Territory. We think the conclusion is irresistible that Congress, having acted, and having placed the regulation of such commerce in the shipping board, the public

utilities commission is excluded from exercising such regulation (*Southern Ry. Co. v. R. R. Comm.,* 236 U. S. 439; *Texas & Pac. Ry. Co. v. Rigsby,* 241 U. S. 33; *Chicago, R. I. etc., Ry. Co. v. Hardwick Elevator Co.,* 226 U. S. 426, 435; *N. Y. Cent. & H. R. R. R. Co. v. Hudson County,* 227 U. S. 248, 264; *St. Louis I. M. & S. Ry. Co. v. Edwards,* 227 U. S. 265, 268).

If it should be held that Congress granted power to the public utilities commission to regulate the rates and fares charged by the appellant in its shipping business by the amendments to Act 135 aforesaid, as to which we have already expressed a doubt, it was not an irrevocable grant and was subject to recall at any time by Congress. In speaking of exertions of power to regulate commerce the Supreme Court in *Louisville Bridge Co. v. United States,* 242 U. S. 409, at page 419, said: "Such a regulation, designed as it is to furnish a guiding rule for future conduct, carries with it the suggestion that it may not always remain unchanged. And since our interstate and foreign commerce is a thing that grows with the growth of the people, and its instrumentalities change with the development and progress of the country, it was not natural that Congress, in enacting the regulation of such commerce, should intend to put shackles upon its own power in respect of future regulation." The legislature of Hawaii, in section 13 of the Public Utilities Act (Sec. 2233 R. L.), heretofore quoted, virtually recognizes the power of Congress to place the regulation of the business of a public utility in some commission, board or court, other than the public utilities commission, thereby taking such regulation out of the control of the commission.

The sole function of the order appealed from being to regulate the fares and rates charged by the appellant in interstate commerce, jurisdiction to make the same rest-

ing solely and exclusively in the shipping board, the order was made without jurisdiction and the other questions raised by the appeal and assignments of error become immaterial and a discussion of them is useless and unnecessary.

The order appealed from is reversed.

*E. M. Watson, C. F. Clemons* and *W. T. Carden* for the Public Utilities Commission.

*D. L. Withington* (*Castle & Withington, Smith, Warren & Whitney,* and *R. W. Breckons* on the brief), and *Frear, Prosser, Anderson & Marx* for the I. I. S. N. Co.