*A. G. Smith* (*Peters & Smith* on the brief) for defendant.

---

·IN THE MATTER OF THE APPLICATION OF THE HAWAII TELEPHONE COMPANY FOR APPROVAL OF AN INCREASE IN ITS RATE SCHEDULE.

## No. 1377.

APPEAL FROM THE PUBLIC UTILITIES COMMISSION.

SUBMITTED MAY 25, 1922.                    DECIDED JULY 27, 1922.

EDINGS AND PERRY, JJ., AND CIRCUIT JUDGE ANDRADE IN PALCE OF PETERS, C. J., DISQUALIFIED.

COMMERCE—*telephone companies—jurisdiction of Interstate Commerce Commission.*

The Interstate Commerce Commission has, under acts of Congress as amended by the Transportation Act of 1920, sole and exclusive jurisdiction to regulate the rates and charges of telephone companies operating wholly within the Territory of Hawaii.

SAME—*same—jurisdiction of public utilities commission.*

The public utilities commission of Hawaii has no jurisdiction to regulate the rates or charges of telephone companies operating wholly within the Territory of Hawaii.

OPINION OF THE COURT BY PERRY, J.

This is an appeal from an order of the public utilities commission of Hawaii prescribing the rates to be charged by the Hawaii Telephone Company, a public utilities corporation, doing business on the Island of Hawaii, for

use of telephones and other appliances.    Two questions are argued in the briefs.    One of them is whether the public utilities commission of the Territory of Hawaii has jurisdiction to prescribe rates for telephone companies in this Territory; and the other is whether, if it has jurisdiction, the order appealed from is, upon the evidence and the law, correct.

Under Act 89, S. L. 1913 (Ch. 128, R. L. 1915), the public utilities commission of this Territory was given power to fix the rates and charges to be made by telephone companies as well as other public utilities, the grant of "general jurisdiction" under the act to the commission being over "all public utilities doing business in the Territory of Hawaii." With reference to rates the language used in the act is: "All rates, fares, charges, classifications, rules and practices made, charged or observed by any public utility, or by two or more public utilities, jointly, shall be just and reasonable and the commission shall have power, after a hearing upon its own motion, or upon complaint, and in so far as it is not prevented by the Constitution or laws of the United States, by order to regulate, fix and change all such rates, fares, charges, classifications, rules and practices so that the same shall be just and reasonable, and to prohibit rebates and unreasonable discriminations between localities, or between users or consumers under substantially similar conditions." R. L. 1915, Sec. 2234. By an act passed ten days later (S. L. 1913, Act 135) the legislature of Hawaii enacted that certain franchises therein named and the holders thereof should be subject "as to reasonableness of rates, prices and charges and in all other respects" to the provisions of Act 89 of the laws of 1913, just mentioned, and all amendments thereof, for the regulation of public utilities in the Territory. This Act 135 was approved and amended by an act of Congress

of March 28, 1916 (39 Stat. L. p. 38). The amendment consisted of the insertion, after the enumeration of the specific franchises and corporations, of the words, "and all franchises heretofore granted to any other public utility company or to public utilities and public utilities companies organized or operating within the Territory of Hawaii;" and by the addition of the following proviso (and another immaterial hereto) : "Provided, however, that nothing herein contained shall in any wise limit the jurisdiction or powers of the Interstate Commerce Commission under the acts of Congress to regulate commerce." Under these two statutes, if standing alone, the territorial commission would have jurisdiction in the case at bar.

Under the act of February 4, 1887 (24 Stat. L. p. 379), Congress established a commission to be known as the Interstate Commerce Commission and placed under its jurisdiction, in certain respects, certain classes of common carriers. Amendments to this act were made by an act of June 29, 1906 (34 Stat. L. p. 584), placing under the jurisdiction of the Interstate Commerce Commission certain other classes of carriers and specifically authorizing the commission to determine and prescribe just and reasonable maximum rates to be charged by the utilities under its jurisdiction. By the act of June 18, 1910 (36 Stat. L. p. 539), entitled "An Act to Create a Commerce Court," Congress further amended the provisions relating to the Interstate Commerce Commission, but in no respect that need be here referred to at length. On February 28, 1920, after the approval and amendment of Act 135 of the Territory of Hawaii, Congress passed what is known as the "Transportation Act of 1920" (41 Stat. L. p. 456), further amending the Interstate Commerce Act and the act creating the commerce court. Under one of these amendments the provision relating to the powers of the Interstate Commerce Commission to fix

rates reads as follows (p. 485): "(1) * * * The Commission is hereby authorized and empowered to determine and prescribe what will be the just and reasonable individual or joint rate, fare or charge, or rates, fares or charges, to be thereafter observed in such case, or the maximum or minimum, or maximum and minimum, to be charged (or, in the case of a through route where one of the carriers is a water line, the maximum rates, fares and charges applicable thereto), and what individual or joint classification, regulation or practice is or will be just, fair and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds that the same does or will exist, and shall not thereafter publish, demand or collect any rate, fare or charge, for such transportation or transmission other than the rate, fare or charge so prescribed, or in excess of the maximum or less than the minimum so prescribed; as the case may be, and shall adopt the classification and shall conform to and observe the regulation and practice so prescribed. (2) Except as otherwise provided in this Act, all orders of the Commission, other than orders for the payment of money, shall take effect within such reasonable time, not less than thirty days, and shall continue in force until its further order, or for a specified period of time, according as shall be prescribed in the order, unless the same shall be suspended or modified or set aside by the Commission, or be suspended or set aside by a court of competent jurisdiction." The Transportation Act of 1920 further amended the law by providing (pp. 474, 475): (1) "That the provisions of this Act shall apply to common carriers engaged in — * * * (c) The transmission of intelligence by wire or wireless; — from one State or Territory of the United States, or the District of Columbia, to any other State or Territory of

the United States, or the District of Columbia, or from one place in a Territory to another place in the same Territory;" and (2) that "the term 'common carrier' as used in this Act shall include all pipe-line companies; telegraph, telephone and cable companies operating by wire or wireless;" and that "the term 'transmission' as used in this Act shall include the transmission of intelligence through the application of electrical energy or other use of electricity, whether by means of wire, cable, radio apparatus, or other wire or wireless conductors or appliances, and all instrumentalities and facilities for and service in connection with the receipt, forwarding, and delivery of messages, communications or other intelligence so transmitted, hereinafter also collectively called messages."

It is unnecessary to determine whether Act 135 as amended and approved by the act of Congress above referred to is to be regarded for the purposes of this case as an act of the Territory of Hawaii or as an act of Congress. In either event Congress has ample power to repeal, modify or suspend the operation of Act 135. In the exercise of its power to govern the Territories Congress can, either directly or indirectly, repeal or suspend a prior law in effect in the Territory of Hawaii, whether it was enacted purely in pursuance of the general power to legislate, granted in advance by the Organic Act of the Territory, or was enacted by Congress itself in the first instance or was enacted by the territorial legislature and approved and amended by Congress. *Railway* v. *Gutierrez*, 215 U. S. 87, 93; *Cound* v. *Atchison Ry.*, 173 Fed. 527, 531. The existence of this power in Congress is expressly conceded by both parties. The question submitted for decision is purely one of intention and construction.

So also it is not questioned by either of the parties

to the present controversy that under these federal statutes, inclusive of the Transportation Act of 1920 with its amendments relating to telephone companies and to the transmission of intelligence by wire or by wireless, the Interstate Commerce Commission has jurisdiction to fix at least the maximum and minimum rates, and perhaps also the absolute rates, to be observed by telephone companies operating wholly within the Territory of Hawaii. The only question presented under the appeal is whether this jurisdiction of the Interstate Commerce Commission is exclusive or exists concurrently with the power in the public utilities commission of this Territory to fix the absolute rates to be charged by the same public utilities under consideration.

It is true that repeals (and suspensions) by implication are not favored but it is equally well established that repeals do sometimes result by implication.   The whole doctrine is simply intended as an aid to construction.   In the present instance the Transportation Act of 1920 does not expressly repeal or suspend the territorial statute on the subject, but a study of the acts involved shows that it must have been the intention of Congress to have the later act operate so as to supersede (whether by way of repeal or as a suspension only is immaterial at this time) the territorial statutes.   In enacting the act of March 28, 1916 (39 Stat. L. p. 38), ratifying and amending our local Act 135, Congress took the precaution to insert the proviso that nothing therein contained should "in any wise limit the jurisdiction or powers of the Interstate Commerce Commission under the acts of Congress to regulate commerce."   The territorial statutes cannot be given full force without at the same time permitting a limitation upon the jurisdiction and powers of the Interstate Commerce Commission.   In so far as the territorial legislature purported to give to the public utilities commission

power by orders and decrees to fix rates and classifica-
tions it certainly must have intended to grant to that
body the power to make orders and decrees which would
be enforceable and not futile. If concurrent jurisdiction
were held to exist the Interstate Commerce Commission
might fix, with reference to telephone companies, certain
maximum and certain minimum rates and the public
utilities commission might at or about the same time fix
an absolute rate either higher than the maximum or
lower than the minimum allowed by the federal body.
It certainly was not contemplated by the legislature of
Hawaii that the rates, when prescribed by the local com-
mission, should be nugatory; and to make them valid
and enforceable rates might often be to run counter to
the rates prescribed by the Interstate Commerce Commis-
sion. Other material conflicts in the exercise of the sup-
posed concurrent authority of the two bodies could easily
be imagined upon a study of the two series of statutes
and the powers thereby conferred. The foregoing suffices,
we think, to show that concurrent jurisdiction could not
be conceded to the local body without at the same time
recognizing that thereby would result a limitation of the
jurisdiction and powers of the Interstate Commerce Com-
mission. It is not that these conflicts would cause incon-
venience; but the fact that these conflicts could result
brings the case within the terms of the proviso or saving
clause inserted by Congress in the statute ratifying Act
135, S. L. 1913. By the very terms of that proviso nothing
in Act 135 contained can be so construed as to confer
upon the public utilities commission any power or juris-
diction in derogation of or in conflict with those granted
to the Interstate Commerce Commission. See *In re I. I.
Steam Navigation Co.*, 24 Haw. 136, in which the same
conclusion, of a lack of jurisdiction in the local commis-
sion, was reached under a similar state of the statutes.

In our opinion the jurisdiction of the Interstate Commerce Commission is exclusive and the order appealed from is therefore set aside.

*Frear, Prosser, Anderson & Marx* for the Hawaii Telephone Co.

*A. G. Smith* and *Watson, Clemons & Hite* for the Public Utilities Commission.

