TERRITORY OF HAWAII, BY THE PUBLIC UTILI-
TIES COMMISSION OF THE TERRITORY OF
HAWAII, *v.* INTER-ISLAND STEAM NAVIGATION
COMPANY.

No. 1984.

Argued September 21, 1931.          Decided October 8, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an action brought by the public utilities com-

mission of this Territory on behalf of the Territory against the Inter-Island Steam Navigation Company, Limited, for the recovery of $33,724.44 claimed to be due from the defendant to the plaintiff for statutory fees under Act 89, L. 1913, and amendments thereto (now chapter 132, R. L. 1925, relating to the public utilities commission). The theory of the declaration is that the defendant is subject to investigation by the public utilities commission, hereafter to be called "the commission," and to the payment of the fees prescribed by the statute as representing the cost of such investigations. The defendant demurred to the declaration on the following grounds: (1) that the declaration does not state a cause of action; (2) "that since the enactment by the Congress of the United States of its Act of March 28, 1916 (39 Stat. at L. C. 53, P. 38), ratifying Act 135 of the Session Laws of Hawaii, 1913, as amended by said Act of March 28, 1916, and the enactment by the Congress of the United States of its Act of September 7, 1916 (39 Stat. at L. C. 451, P. 728), the Territory of Hawaii and the public utilities commission of said Territory have been and still are respectively without jurisdiction over the public utility business of this defendant in any respect or for any purpose;" and (3) "that it does not appear in or by said complaint that this defendant or any part of its business is subject to investigation by said commission, or that this defendant is liable by law to pay any of the fees contemplated by section 17 of Act 89 of the Session Laws of Hawaii, 1913 (as amended by Act 127 of the Session Laws of Hawaii, 1913), now section 2207 of the Revised Laws of Hawaii, 1925, or otherwise."

Upon the filing of the demurrer the circuit judge reserved for the consideration of this court the following questions: 1. "Is the public utility portion of defendant's business subject to investigation by the plaintiff under

chapter 132, Revised Laws of Hawaii?" 2. "Is the defendant liable by law to pay any of the fees contemplated in section 2207, Revised Laws of Hawaii, 1925?" 3. "Should defendant's said demurrer be sustained upon any ground therein stated?"

It appears from the declaration that the defendant is a corporation created and existing under the laws of Hawaii and that during all of the times involved in this action it "has owned, controlled, operated and managed as owner, and still does own, control, operate and manage as owner, numerous steam vessels, wharves, docks and their appurtenances, directly for public use, to-wit: the transportation of passengers and freight between the various ports and points in the Territory of Hawaii, both between the different islands of the Territory and between different ports and points on each island of the Territory, except that on the Island of Oahu the only port of call is the city of Honolulu."

By Act 89, L. 1913, the legislature created a public utilities commission of three members and provided that the commission should have "the general supervision hereinafter set forth over all public utilities doing business in the Territory" and should "perform the duties and exercise the powers imposed or conferred upon it by this chapter." R. L. 1925, §§ 2189, 2192. In section 18 of the same Act the term "public utility" as used in the Act was defined to "mean and include every person, company or corporation, who or which may own, control, operate or manage as owner, lessee, trustee, receiver, or otherwise, whether under a franchise, charter, license, articles of association, or otherwise, any plant or equipment, or any part thereof, directly or indirectly for public use, for the transportation of passengers or freight, or the conveyance or transmission of telephone or telegraph messages, or the furnishing of facilities for the trans-

mission of intelligence by electricity by land or water or air between points within the Territory, or for the production, conveyance, transmission, delivery or furnishing of light, power, heat, cold, water, gas or oil, or for the storage or warehousing of goods." R. L. 1925, § 2208. It is clear that the defendant corporation is a public utility within the meaning of the Act under consideration. This is expressly admitted in the defendant's brief on file in this case.

Much has been said in the briefs on the subject of whether or not by the Act of March 28, 1916 (39 Stat. L. 38, c. 53), amending, ratifying, approving and confirming Act 135, L. 1913, Congress placed the defendant corporation under the jurisdiction of the public utilities commission of the Territory of Hawaii. We fail to see the importance or the relevancy of this question, since it clearly appears that by Act 89, L. 1913, the defendant was placed under the jurisdiction of the commission and since it further appears with equal clearness that by the Act of March 28, 1916, the jurisdiction of the commission over the defendant was neither expressly nor impliedly withdrawn or modified. The Act of March 28, 1916, placed certain franchise-bearing corporations under the jurisdiction of the commission. It is vigorously contended that the defendant has at no time received a franchise from the Territory or its predecessors. Assuming the latter to be true, it may be that under the expression, inserted by Congress, "and all public utilities and public utilities companies organized or operating within the Territory of Hawaii," the defendant corporation was included and was thereby declared to be under the jurisdiction of the commission. But if that expression cannot be so construed and has not that operation (on the theory that even in that expression franchise-bearing corporations only were referred to), nevertheless the

defendant had already been placed by Act 89 under the jurisdiction of the commission. If the Act of March 28, 1916, dealt only with franchise-bearing corporations, it was because the assent of Congress was under the Organic Act necessary to validate legislation affecting their franchises. No intent is evident in that Act to subtract from the jurisdiction of the local commission.

Concerning the construction of Act 89, L. 1913, the defendant expressly concedes, and we think correctly, that "such authority as the Territory has over public utilities has in fact been granted to the public utilities commission" of this Territory. It contends, however, that such power, if any, as the Territory ever had to regulate or investigate this particular public utility, to-wit, the defendant corporation, was wholly withdrawn by the Act of Congress of September 7, 1916, known as the "Shipping Board Act."

In creating this Territory Congress provided that "the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." Organic Act, § 55. Certain limitations to this general statement are contained in the same section, but they are not material for the purposes of this case. It has long since become well established judicially that the investigation and the regulation of public utility corporations is a rightful subject of legislation. There is no question in this case whether this Territory has "reserved powers" similar to those withheld by the States in the adoption of the national Constitution. Congress has the undoubted, constitutional right to govern this Territory and in the exercise of that right was authorized to delegate, as it did, to the local legislature the power to legislate on "all rightful subjects of legislation," subject to the limitations stated. In 1913, therefore, when Act 89

was passed and before the Shipping Board Act was passed, the legislature had the power to create the public utilities commission and to give it the grants of authority which are involved in this case, provided only that in so doing it violated no provision of the Constitution of the United States and subject always to the power of Congress to repeal or to modify, directly or indirectly, Act 89.

The provision under which fees are herein claimed from the defendant is to be found in section 17 of Act 89, L. 1913 (R. L. 1925, § 2207), reading as follows: "Finances. All salaries, wages and expenses, including traveling expenses, of the commission, each commissioner and its officers, assistants and employees, incurred in the performance or exercise of the powers or duties conferred or required by this chapter, may be paid out of any appropriation available for the purpose. Section 2542 shall apply to the commission and each commissioner, as well as to the supreme and circuit courts and the justices and judges thereof, and all costs and fees paid or collected hereunder shall be deposited in the treasury of the Territory to the credit of a special fund to be called the 'Public Utilities Commission Fund' which is created for the purpose. There shall also be paid to the commission in each of the months of March and September in each year by each public utility which is subject to investigation by the commission a fee which shall be equal to one-twentieth of one per cent. of the gross income from the public utility business carried on by such public utility in the Territory during the preceding year, plus one-fiftieth of one per cent. of the par value of the stock issued by such public utility and outstanding on December 31 of the preceding year, if its principal business is that of performing public utility services in the Territory. Such fee shall likewise be deposited in the treasury to the credit of the fund. The moneys in the fund are appro-

priated for the payment of all salaries, wages and expenses authorized or prescribed by this chapter."

In section 1 of the Shipping Board Act of September 7, 1916, Congress provided that "the term 'common carrier by water in interstate commerce' means a common carrier engaged in the transportation by water of passengers or property on the high seas or the Great Lakes on regular routes from port to port between one State, Territory, District, or possession of the United States and any other State, Territory, District, or possession of the United States, or between places in the same Territory, District, or possession." It is contended on behalf of the defendant that by virtue of this congressional declaration the defendant corporation, which is engaged in the transportation of passengers and freight "between places in the same Territory," is engaged in interstate commerce, that the fees prescribed by section 17 of Act 89 are a burden upon this interstate commerce and that therefore the requirement of section 17 that the defendant pay the fees named is unconstitutional. It is interesting to note that the expression "interstate commerce" is not used in the constitutional provision relied upon by the defendant in this connection. The language of that provision (Article I, section 8) is that "the Congress shall have power * * * to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." Whatever room for construction might have been afforded if the constitutional expression had been "interstate commerce," there can be no doubt that commerce "among the several States," even assuming that that may mean commerce among one or more states on the one hand and a territory on the other, does not mean or include commerce between two or more points wholly within the same state or commerce between two or more points wholly within the same territory, particularly when no passage

over or through another state or territory is necessary or is had in order to go from the one to the other of the two points within the same state or within the same territory. Surely if there were two lakes connected by a navigable river, whatever its length, the lakes and the river being all entirely within the same state or territory, transportation in ships between points in one lake and points in the other lake could not possibly be held to be commerce "among the several States" within the meaning of the constitutional provision. The meaning of that expression as used in the Constitution presents a question purely judicial. The effect of the expression cannot be added to or modified by congressional enactment.

Nor is there any reason for supposing that in giving the definition just quoted from section 1 of the Shipping Board Act Congress intended to define or in any wise modify section 8 of Article I of the Constitution. It had ample authority to make the provision under its constitutional power (Article IV, section 3) "to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States" and doubtless was acting under that authority. The definition was intended to indicate the meaning of the expression "interstate commerce" *as used in that Act* and not as used in the Constitution. In so far, therefore, as the power of Congress to regulate commerce "among the several States" is concerned, the requirement of fees measured by the public utility business done by the defendant corporation solely between places within this Territory is not a burden upon commerce between states and is not a violation of that constitutional provision.

Section 13, Act 89, L. 1913 (R. L. 1925, § 2201), reads as follows: "If the commission shall be of the opinion that any public utility is violating or neglecting to comply with any territorial or federal law, or any provision of

its franchise, charter, or articles of association, if any, or that changes, additions, extensions or repairs are desirable in its plant or service in order to meet the reasonable convenience or necessity of the public, or to insure greater safety or security, or that any rates, fares, classifications, charges or rules are unreasonable or unreasonably discriminatory, or that in any way it is doing what it ought not to do, or not doing what it ought to do, it shall in writing inform the public utility of its conclusions and recommendations, shall include the same in its annual report, and may also publish the same in such manner as it may deem wise. The commission shall have power to examine into any of the matters referred to in section 2193, notwithstanding that the same may be within the jurisdiction of the interstate commerce commission, or within the jurisdiction of any court or other body, and when after such examination the commission shall be of the opinion that the circumstances warrant, it shall be its duty to effect the necessary relief or remedy by the institution and prosecution of appropriate proceedings or otherwise before the interstate commerce commission, or such court or other body, in its own name or in the name of the Territory, or in the name or names of any complainant or complainants, as it may deem best." Under this section the commission is authorized to investigate the acts and omissions of the defendant and, if it deems them to be unlawful, to institute and prosecute appropriate proceedings before the interstate commerce commission or the shipping board or any other body thereunto properly authorized in order to secure relief from the unlawful practices complained of. Does the Shipping Board Act withdraw or limit this power? The Shipping Board Act authorizes the shipping board to regulate the rates, fares, charges, classifications, tariffs and practices of every "common carrier by water in inter-

state commerce" which, for the purposes of the Act, includes the defendant corporation and, it may be assumed, to make all investigations necessary for the complete exercise of the power of regulation.

It is the contention of the defendant that the grant of power to the shipping board is so broad and complete that there is no room left for any investigation by the local commission, that the exercise by the local commission of a power to investigate would be unduly harassing and that Congress intended to vest exclusive power of investigation in the shipping board. With this contention we feel unable to agree. When an individual proposes to complain to the shipping board or to the interstate commerce commission of unlawful practices of a public utility, it is the part of wisdom, usually followed, that that individual should first investigate and ascertain the facts to the best of his ability. There certainly can be no impropriety or conflict of authority in empowering the local commission, as the representative of this Territory, to make a complaint before the shipping board or any other authorized body of illegal practices or acts claimed by it to have been committed by a public utility. The Territory as a whole is certainly interested in seeing that the law, whether federal or local, is observed in all respects by its public utilities. Should the Territory be denied the privilege which belongs to every individual of investigating and ascertaining the facts before making formal complaint to the body authorized to regulate? Should it not have the power to make an investigation that will be complete and effective? And if it is authorized, as it is by Act 89, to make an investigation which is complete and effective,—solely for the purpose of placing the facts before the body authorized to regulate—can this power or its exercise be held to be in conflict with the power of the shipping board to regulate or with the intent

of Congress that the shipping board alone should regulate? We think not. In our opinion the power to investigate, to make complaint and to institute and to maintain proceedings before the shipping board is not inconsistent with the power of the shipping board to decide upon the merits of the complaint and to regulate as in its wisdom it may see fit to regulate. Under these circumstances, there can be no repeal by implication.

Similar statutes, some conferring the power only to make complaint and some conferring the power to investigate as well as the power to complain, have been enacted in many states. See, for example: Ala. Code, 1928, § 9669; Crawford & Moses, Dig. Stat., Ark., 1921, § 1630; Struckmeyer, Rev. Code, Ariz., 1928, § 691; Henning's Gen. Laws, Cal. (Hyatt, Pt. 2, 1920), § 34, p. 2518; 2 Park's Ann. Code, Ga., 1914, §§ 2645, 2646, 2647; Code of Iowa, 1927, §§ 7890, 7891; Rev. Stat., Kan., Ann., 1923, § 66-148; 1 Bagby, Ann. Code, Md., Art. 23, § 384, p. 835; Gen. Stat., Minn., 1923, §§ 4719, 4721, 4660; 1 Rev. Stat., Mo., 1909, § 3253; Cahill's Cons. Laws, N. Y., 1930, c. 49, § 59, p. 1878; 1 Cons. Stat. Ann., N. C., 1919, § 1075, p. 464; 2 Pub. Laws, N. H., 1926, §§ 22, 23, p. 923; Pa. Stat., 1920, § 18135, p. 1750; 2 Comp. Laws, S. Dak., 1929, §§ 9577, 9578, p. 3264; 1 Wis. Stat., § 1797-21, p. 1536. These statutes are apparently in force and acted upon in these various states. No decision that any of them is unconstitutional has been called to our attention. In *Oregon R. & Nav. Co.* v. *Campbell*, 173 Fed. 957, 980, the court, commenting on the Oregon statute above mentioned, said: "But by section 47 it is made the duty of the commission to investigate freight rates on interstate traffic on railroads in the state, and when, in the opinion of such commission, the rates are excessive or discriminatory, to present the facts thereof to the offending railroad company, and, if without avail, then

to apply to the interstate commerce commission for relief. From this one provision of the act, if from none other, the deduction is absolute that there was no intention on the part of the legislature of the state to enter the domain of interstate regulation of railroad traffic. The commission is a state commission, designed to render state service, and no intendment should be deduced that it is empowered to execute a broader or an unlawful service, unless the language is explicit, unmistakably leading to such conclusion. No such language is found in the Act, and upon its face it is not inimical to the commerce clause of the national Constitution." We, too, think that in our legislature's authorization to the public utilities commission to investigate and to present the facts to the shipping board, if necessary, there is nothing inimical either to the commerce clause of the national Constitution or to the provision of Congress authorizing the shipping board to regulate the rates, practices, etc., of the defendant corporation.

The power to legislate on all rightful subjects of legislation was given to the legislature by the Organic Act in unambiguous terms. The intent to withdraw that power from the legislature, in so far as mere investigations of and complaints against a public utility doing business within this Territory are concerned, is not discernible in the Shipping Board Act.

Since the power to investigate exists, the power to exact fees to defray the expenses of such investigations follows. There is no contention in the case at bar that the exactions of the statute are so clearly unreasonable and confiscatory as to be invalid; therefore there will be no examination into that question.

In the case entitled *Re I.-I. S. N. Co.*, 24 Haw. 136, it was held that the local commission had no jurisdiction to regulate the rates and charges of the defendant corporation; but the question of whether the commission

had the power to investigate or to exact fees was not before the court and was not considered. Similarly, in the case entitled *In re Hawaii Telephone Co.,* 26 Haw. 508, it was held that the local commission has no jurisdiction to regulate the rates or charges of telephone companies operating wholly within the Territory of Hawaii. In that case, also, the power to investigate or to exact fees was not involved and was not considered. We find nothing in either of these two opinions to require conclusions other than those herein reached.

The question whether this is one of the instances in which, Congress having acted under the interstate commerce clause, the state or territory may not lawfully act, need not be considered,—because it is undoubted that Congress, under its constitutional power to govern the territories, can legislate fully on the subject and can exclude action by the territorial legislature. Congress has acted, to a certain extent. The question is, has our legislature acted *in conflict* with the statute of Congress? When Congress has given to the interstate commerce commission or to the shipping board the power to regulate and even, it may be assumed, to investigate the public utilities of Hawaii, including the present respondent, is it in conflict with that grant and mandate for our legislature to authorize the public utilities commission to investigate and to present petitions to the interstate commerce commission or to the shipping board? For the reasons above stated, we think not.

The first and second questions reserved are answered in the affirmative. The third question is answered in the negative.

*J. R. Cades* (*Smith & Wild* on the briefs) for plaintiff.

*J. G. Anthony* and *C. D. Pratt* (*Smith, Warren, Stanley & Vitousek* and *Robertson & Castle* on the briefs) for defendant.